In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-1476

SHANE CRUTCHFIELD,

*Petitioner-Appellant,*

*v.*

JEFF DENNISON,

*Respondent-Appellee.*

Appeal from the United States District Court
for the Central District of Illinois.
No. 12-C-2229 — **Harold A. Baker**, *Judge.*

ARGUED DECEMBER 7, 2017 — DECIDED DECEMBER 12, 2018

Before BAUER, MANION, and SYKES, *Circuit Judges.*

SYKES, *Circuit Judge.* Shane Crutchfield was charged with several Illinois drug crimes and faced enhanced penalties based on his lengthy criminal record. The prosecutor offered a plea deal that would have capped his sentence at 25 years, explaining that Crutchfield would have to serve 85 percent of that term under state law. Crutchfield's attorney advised him of the offer but did not correct the prosecutor's mistake: under Illinois good-time law, Crutchfield would have been eligible for release after serving 50 percent of his sentence,

not 85 percent. Crutchfield rejected the deal. A jury found him guilty, and the judge imposed a 40-year sentence.

After direct appeal and two rounds of postconviction proceedings, Crutchfield filed for federal habeas review under 28 U.S.C. § 2254 claiming that his trial attorney's flawed legal advice about the plea offer amounted to ineffective assistance in violation of his Sixth Amendment right to counsel under the rule of *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984). He says he would have taken the deal if his attorney had correctly advised him about the good-time law. But he did not raise this claim on direct appeal or in his initial state postconviction proceeding. Instead, he belatedly presented it in a successive postconviction petition. Applying Illinois rules of procedural default, the state courts refused to hear the claim. The district judge denied § 2254 relief based on the unexcused procedural default.

Crutchfield concedes the default but asks us to hold that Illinois prisoners may use the *Martinez–Trevino* gateway to obtain review of defaulted claims of ineffective assistance of trial counsel. *See Martinez v. Ryan*, 566 U.S. 1 (2012); *Trevino v. Thaler*, 569 U.S. 413, 429 (2013). We decline to do so. Illinois does not impose the kind of restrictive procedural rules on *Strickland* claims to warrant application of the *Martinez– Trevino* exception. Because Crutchfield procedurally defaulted his *Strickland* claim and has not shown cause to excuse the default, we affirm the district court.

## I. Background

In 2005 officers searched Shane Crutchfield's home in Decatur, Illinois, recovering large quantities of cocaine and marijuana along with digital scales, plastic baggies, and cash. Crutchfield was arrested and charged in state court

with various drug-trafficking crimes. Because he was a repeat drug offender, Crutchfield faced mandatory minimums and enhanced maximum penalties on several of the counts against him. The prosecutor offered a plea deal calling for a 25-year sentence, explaining that under state law Crutchfield would be required to serve 85 percent of that sentence. That meant 21.25 years behind bars.

The prosecutor was mistaken about how much of the 25-year sentence Crutchfield would have had to serve. With certain inapplicable exceptions, the state's good-time law awards day-for-day credit for good behavior in prison. 730 ILL. COMP. STAT. 5/3-6-3(a)(2.1). Accordingly, with good behavior an Illinois prisoner is entitled to release after serving 50 percent of his sentence. At the time of Crutchfield's crimes, the list of exceptions to this general rule did not include any of the drug charges lodged against him. 2005 Ill. Legis. Serv. P.A. 94-128 (H.B. 611) (amended 2007). Later the Illinois legislature expanded the list of exceptions to include one of the drug crimes Crutchfield was accused of committing, but the amendment applied only to crimes committed on or after August 13, 2007. 730 ILL. COMP. STAT. 5/3-6-3(a)(2)(v). So under the plea deal and assuming a clean record in prison, Crutchfield would have completed his sentence in 12.5 years, not 21.25 years.

Crutchfield's trial counsel advised him of the plea offer but did not correct the prosecutor's mistake. Operating under the misunderstanding that he would have to serve 21.25 years if he accepted the deal, Crutchfield rejected it. The case proceeded to trial and a jury found him guilty. His counsel moved for a new trial, but the judge denied the motion and imposed a sentence of 40 years. With day-for-

day good-time credit, Crutchfield will spend 20 years in prison.

Crutchfield retained new counsel, and his new attorney moved for reconsideration of the denial of the motion for a new trial. The reconsideration motion raised a *Strickland* claim alleging several deficiencies in trial counsel's performance, but it did not identify any error in plea negotiations. The judge held an evidentiary hearing, and Crutchfield testified about his attorney's shortcomings but he did not complain about counsel's handling of the plea offer. The judge denied the motion.

Direct appeal followed. Crutchfield asserts that at this point he told his appellate attorney that his trial counsel had misinformed him about the amount of time he would spend in prison under the plea offer. His appellate attorney did not raise the claim on appeal, focusing instead on the alleged errors identified in the posttrial motions as well as other claims. The Illinois Appellate Court affirmed, and the Illinois Supreme Court denied leave to appeal.

While the direct appeal was still pending, Crutchfield filed a pro se postconviction petition raising several claims of ineffective assistance of trial and appellate counsel, none relating to the plea offer. The trial court denied the motion, but the appellate court reversed, concluding that certain of Crutchfield's claims of ineffective assistance of trial and appellate counsel warranted further proceedings. On remand counsel was appointed, and the new attorney filed an addendum to the pro se petition raising additional claims. Crutchfield asserts that he advised his postconviction attorney that his trial counsel had misinformed him about how long he would serve in prison under the plea deal. But postconviction counsel did not raise the claim in the adden-

dum. The trial court denied relief, the appellate court affirmed, and the Illinois Supreme Court denied leave to appeal.

In July 2012 Crutchfield filed a pro se motion for leave to file a second postconviction petition. For the first time, he alleged that his trial counsel misinformed him about the amount of time he would have to spend in prison under the plea offer. He cited the Supreme Court's then-recent decision in *Lafler v. Cooper*, 566 U.S. 156, 163 (2012), which explains "how to apply *Strickland*'s prejudice test where ineffective assistance results in a rejection of a plea offer and the defendant is convicted at the ensuing trial." He also attached what purported to be a letter from his trial attorney acknowledging that the prosecutor had offered a 25-year sentence "and [the prosecutor] did state that [Crutchfield] would not receive day for day credit and would have to serve 85% of the sentence pursuant to statute," and that "Crutchfield rejected the offer."

The trial judge denied leave to file the successive postconviction petition, holding that Crutchfield had not shown cause for failing to include this claim in his first postconviction petition or prejudice resulting from the default. The Illinois Appellate Court affirmed for the same reasons, and the Illinois Supreme Court denied review.

Crutchfield then filed a pro se § 2254 petition in federal court seeking habeas relief on several claims of constitutional error, including the defaulted *Strickland* claim for ineffective assistance of counsel in plea negotiations. The judge denied relief on that claim based on the unexcused procedural default, rejected the other claims on the merits, and declined to issue a certificate of appealability. Crutchfield appealed. We issued a certificate of appealability limited to

the claim of ineffective assistance of counsel in plea negotiations and recruited pro bono counsel for Crutchfield.[1]

## II. Discussion

We begin with the rules of exhaustion and procedural default in federal habeas review of state convictions. A federal court will not hear a state prisoner's habeas claim unless the prisoner has first exhausted his state remedies by presenting the claim to the state courts for one full round of review. *Davila v. Davis*, 137 S. Ct. 2058, 2064 (2017). "The exhaustion requirement is designed to avoid the 'unseemly' result of a federal court 'upset[ting] a state court conviction without' first according the state courts an 'opportunity to … correct a constitutional violation.'" *Id.* (quoting *Rose v. Lundy*, 455 U.S. 509, 518 (1982) (alteration and omission in original)).

The rule of procedural default is an important corollary to the exhaustion requirement: "[A] federal court may not review federal claims that were procedurally defaulted in state court—that is, claims that the state court denied based on an adequate and independent state procedural rule." *Id.* A federal court may hear a defaulted claim if the prisoner establishes "'cause' to excuse his failure to comply with the state procedural rule and 'actual prejudice resulting from the alleged constitutional violation.'"[2] *Id.* at 2064–65 (quoting *Wainright v. Sykes*, 433 U.S. 72, 84 (1977)). "Cause" is an

---

[1] Attorneys Christopher Michel, Jeffrey Harris, and Kirkland & Ellis LLP accepted the pro bono assignment and have ably discharged their duties. We thank them for their service to their client and the court.

[2] A federal habeas court may also excuse a procedural default if the prisoner makes a convincing showing of actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 749–50 (1991). Crutchfield does not make a claim of actual innocence.

objective factor external to the defense that impeded the presentation of the claim to the state courts. *Id.* at 2065. A factor is "external to the defense" only if it "cannot fairly be attributed to" the prisoner. *Coleman v. Thompson*, 501 U.S. 722, 753 (1991) (quotation marks omitted).

Crutchfield concedes that he procedurally defaulted his claim that his trial counsel was ineffective in plea negotiations. He argues that we should excuse the default because he has shown cause for the default and actual prejudice from the alleged *Strickland–Lafler* violation. We decide this issue without deference to the district court. *Johnson v. Foster*, 786 F.3d 501, 504 (7th Cir. 2015).

## A. The *Coleman* Rule and the *Martinez–Trevino* Exception

Crutchfield argues that his postconviction counsel is to blame for defaulting this claim in the initial state postconviction proceeding. Even if true, attorney error is not cause to excuse a procedural default. *Coleman*, 501 U.S. at 753. Mistakes by counsel are imputed to the client under "well-settled principles of agency law," so attorney error is not a factor external to the defense. *Id.* at 754.

If, however, an error by counsel amounts to ineffective assistance under the Sixth Amendment, then the error "is imputed to the State and is therefore external to the prisoner." *Davila*, 137 S. Ct. at 2065 (internal quotation marks omitted). In other words, the State bears the risk of attorney error as a part of its constitutional duty to provide counsel. *Coleman*, 501 U.S. at 754.

"It follows, then, that in proceedings for which the Constitution does not guarantee the assistance of counsel at all, attorney error cannot provide cause to excuse a default." *Davila*, 137 S. Ct. at 2065. Because there is no Sixth Amend-

ment right to counsel on collateral review, attorney error in postconviction proceedings is not cause to excuse a procedural default. *Id.* (citing *Coleman*, 501 U.S. at 755).

In *Martinez v. Ryan*, the Supreme Court carved out a limited exception to the *Coleman* rule. Luis Martinez, an Arizona prisoner, sought § 2254 review of a defaulted *Strickland* claim for ineffective assistance of trial counsel. Under Arizona law claims of ineffective assistance of trial counsel must be raised in collateral-review proceedings, not on direct appeal. The Court held where state law *requires* prisoners to raise *Strickland* claims on collateral review, a procedural default at that stage will not preclude a federal court from hearing the claim if "there was no counsel or counsel in that proceeding was ineffective." *Martinez*, 566 U.S. at 17. But the default is not automatically excused. Under the *Martinez* exception, a federal court may hear a defaulted *Strickland* claim if the prisoner shows that the underlying claim is "substantial" and that postconviction counsel's failure to raise it amounted to constitutionally ineffective assistance. The first requirement is not a high bar, however; to qualify as "substantial," the claim need only have "some merit." *Id.* at 14.

In *Trevino v. Thaler*, the Court extended the *Martinez* exception to § 2254 proceedings in states that do not forbid prisoners from presenting *Strickland* claims on direct review but "as a matter of procedural design and systemic operation, den[y] a meaningful opportunity to do so." 569 U.S. at 429. Carlos Trevino was a Texas prisoner on death row for murder. He sought federal habeas relief alleging that his trial counsel provided ineffective assistance in the sentencing phase of trial. The trial court had appointed new counsel on direct appeal and again on collateral review, but neither attorney raised this claim. That was a procedural default.

Unlike Arizona, however, Texas does not expressly *require* prisoners to reserve *Strickland* claims for collateral review, so the *Martinez* gateway to federal review of the defaulted claim was unavailable. The district court declined to hear the claim and the Fifth Circuit affirmed.

The Supreme Court reversed, holding that because Texas procedural rules make it "all but impossible" to raise a *Strickland* claim on direct appeal, the *Martinez* exception is available to Texas prisoners seeking § 2254 review of defaulted claims of ineffective assistance of trial counsel. *Id.* at 427, 429. The Court explained that although Texas theoretically permits *Strickland* claims on direct appeal, the state's procedural system operates to prevent meaningful review at that stage. *Id.* at 423–24. *Strickland* claims often require development of a factual record, and while a Texas defendant may move for a new trial in order to develop the needed factual support, the applicable time limits make that vehicle wholly inadequate. *Id.* at 424. Under Texas law a motion for a new trial must be filed within 30 days of sentencing, and the trial court must rule on that motion within 75 days of sentencing. *Id.* (citing TEX. R. APP. PROC. 21.4, 21.8(a), (c)). But the court reporter has 120 days after sentencing to prepare the trial transcript, and this deadline may be extended. *Id.* (citing TEX. R. APP. PROC. 35.2(b), 35.3(c)). In the words of the Court of Criminal Appeals of Texas—the state's highest criminal tribunal—these procedural rules combine to make it "virtually impossible" for appellate counsel to adequately present a *Strickland* claim on direct review. *Id.* at 423 (quoting *Robinson v. State*, 16 S.W.3d 808, 810–11 (Tex. Crim. App. 2000)).

That was decisive for the Supreme Court. The Court observed that these practical procedural impediments led the

Texas courts to "strongly discourage" defendants from raising *Strickland* claims on direct review. *Id.* at 425–27. Indeed, the Court of Criminal Appeals had announced a "general rule" that defendants "should *not* raise an issue of ineffective assistance of counsel on direct appeal." *Id.* at 426 (quoting *Mata v. State*, 226 S.W.3d 425, 430 n.14 (Tex. Crim. App. 2007)). As the Supreme Court put it, this "general rule" amounted to a determination by the Texas courts that collateral review is "as a practical matter, the *only* … method for raising an ineffective-assistance-of-counsel claim." *Id.* at 427 (emphasis added). Accordingly, because Texas does not offer a meaningful opportunity to present these claims on direct appeal, the Court held that Texas prisoners may use the *Martinez* exception to obtain federal review of defaulted claims of ineffective assistance of trial counsel. *Id.* at 428.

Crutchfield asks for the same result here. Whether to extend the *Martinez–Trevino* exception depends on the procedural regime where the prisoner was convicted, so we have taken a jurisdiction-by-jurisdiction approach to this question. *See Brown v. Brown*, 847 F.3d 502, 509–10 (7th Cir. 2017). In *Ramirez v. United States*, we held that federal prisoners may use the exception to obtain review of defaulted *Strickland* claims. 799 F.3d 845, 852–54 (7th Cir. 2015). We explained that the Supreme Court has "criticized the practice of bringing these claims on direct appeal" because that forum is not suitable for assessing the claim. *Id.* at 853 (citing *Massaro v. United States*, 538 U.S. 500, 504 (2003)). Our court has gone even further, saying that a *Strickland* claim is "doomed" without additional record development and "the federal courts have no established procedure … to develop ineffective assistance claims for direct appeal." *Id.*

Moreover, a federal prisoner has much to lose and little to gain from raising a *Strickland* claim on direct appeal. "[T]here is no procedural default for failure to raise an ineffective-assistance claim on direct appeal … even if the basis for the claim is apparent from the trial record." *Id.* But if the defendant *does* raise an ineffective-assistance claim on direct appeal, he is precluded from bringing any other claim of ineffective assistance of trial counsel on collateral review. *Id.*; *see, e.g.*, *Peoples v. United States*, 403 F.3d 844, 847–48 (7th Cir. 2005). For these reasons, we held in *Ramirez* that "the situation of a federal petitioner is the same as the one the Court described in *Trevino*: as a practical matter, the first opportunity to present a claim of ineffective assistance of trial or direct appellate counsel is almost always on collateral review[] in a motion under section 2255." *Ramirez*, 799 F.3d at 853.

In *Brown v. Brown*, we held that Indiana prisoners may use the *Martinez–Trevino* exception as a path to federal review of defaulted claims of ineffective assistance of trial counsel. 847 F.3d at 513. Indiana appellate courts will hear *Strickland* claims on direct review, and under the so-called *Davis–Hatton* procedure,[3] a prisoner may suspend his direct appeal to pursue an immediate petition for postconviction relief for the purpose of developing a factual record to support the claim. The direct appeal and collateral-review appeal are then consolidated. *Id.* at 511. As we explained in *Brown*, however, the *Davis–Hatton* procedure is "special, limited, … [and] rarely used." *Id.* at 512 (quoting *Trevino*, 569 U.S. at 427). Indeed, as the Indiana Public Defender

---

[3] *Davis v. State*, 368 N.E.2d 1149 (Ind. 1977); *Hatton v. State*, 626 N.E.2d 442 (Ind. 1993).

Council reported, "between 2008 and 2012, its attorneys filed approximately 2000 appeals and only four *Davis–Hatton* petitions." *Id.* We noted as well that the Indiana appellate courts have expressed a strong preference for reserving *Strickland* claims for collateral review. *Id.*

Indiana also applies a rule against claim splitting in this context. Mirroring the federal system, an Indiana prisoner who raises a *Strickland* claim on direct appeal is barred from litigating any other claim of ineffective assistance of trial counsel on collateral review. *Id.* at 510–11. This strong rule of preclusion was "critical" to our analysis in *Brown*. *Id.* The opportunity to litigate a *Strickland* claim on direct review is less meaningful when doing so means sacrificing the option to raise other errors by trial counsel in a collateral-review proceeding. Based on the combined effect of these features of state law, we concluded that the "'structure, design, and operation[]' [of] the Indiana procedural system 'does not offer most defendants a meaningful opportunity to present a claim of ineffective assistance of trial counsel on direct appeal.'" *Id.* at 512–13 (quoting *Trevino*, 569 U.S. at 428). Indiana prisoners, we held, may use the *Martinez–Trevino* exception to obtain federal review of defaulted claims of ineffective assistance of trial counsel. *Id.* at 513.

## B. *Strickland* Claims in Illinois

The factors that warranted the Court's expansion of the *Martinez* rule in *Trevino* and our application of *Martinez–Trevino* in *Ramirez* and *Brown* are notably absent in Illinois. State law permits *Strickland* claims on direct review, and the Illinois Supreme Court has neither directed criminal appellants to save all such claims for collateral review nor warned against raising them on direct appeal. Moreover, Illinois defendants may expand the record on direct appeal by

raising a *Strickland* claim in a posttrial motion and developing the factual record at an evidentiary hearing. Indeed, the Illinois Supreme Court fashioned a special posttrial motion procedure for the precise purpose of developing a record for litigating a *Strickland* claim in this way. In addition, the relevant time frames are flexible enough to allow development of the claim for direct review. Last, Illinois does not apply a blanket rule against claim splitting.

To begin, the Illinois Supreme Court has not discouraged criminal defendants from raising *Strickland* claims on direct review. Quite the contrary. If the claim relies solely on the existing record, it *must* be brought on direct appeal. *People v. Veach*, 89 N.E.3d 366, 375 (Ill. 2017). For *Strickland* claims in this category, the Illinois Supreme Court has cautioned that "a defendant must generally raise a constitutional claim alleging ineffective assistance of counsel on direct review or risk forfeiting the claim." *Id.* That rule is the opposite of the default rule in Texas and Indiana. *See Trevino*, 569 U.S. at 426 (discussing the "general rule" in Texas courts that defendants "should *not* raise an issue of ineffective assistance of counsel on direct appeal"); *Brown*, 847 F.3d at 512 (describing the Indiana Supreme Court's explanation that Indiana's rules "deter all but the most confident appellants from asserting *any* claim of ineffectiveness on direct appeal") (emphasis added).

Nor has the Illinois Supreme Court expressed a preference for reserving these claims for collateral review. It has said only that claims of "ineffective assistance of counsel … may *sometimes* be better suited to collateral proceedings but only when the record is incomplete or inadequate for resolving the claim." *Veach*, 89 N.E.3d at 375 (emphasis added). Crutchfield directs our attention to earlier decisions of the

intermediate appellate court, most notably *People v. Kunze*, 550 N.E.2d 284 (Ill. App. Ct. 1990). There the Illinois Appellate Court said that "[a]n adjudication of a claim of ineffective assistance of counsel is better made in proceedings on a petition for post-conviction relief, when a complete record can be made and the attorney client privilege no longer applies." *Id.* at 296. But in *Veach* the Illinois Supreme Court expressly disavowed this language from *Kunze*, explaining at length that this statement by the appellate court was in error. 89 N.E.3d at 374–77.

In addition, posttrial procedures for record expansion in Illinois are more flexible and more widely available than those in Texas and Indiana. Two types of posttrial motions allow for the expansion of the record on appeal: an ordinary motion for a new trial and the so-called *Krankel* posttrial motion. Both procedures allow defendants to present extra-record evidence at a hearing, and the hearing transcript forms part of the record on appeal. ILL. SUP. CT. R. 608(a)(10).

First, a defendant may move for a new trial within 30 days of the return of the jury verdict or entry of a finding of guilt. 725 ILL. COMP. STAT. 5/116-1(b). The motion may incorporate matters outside the record, and if the allegations establish a colorable basis for a new trial, the trial court will hold an evidentiary hearing to allow the defendant an opportunity to prove up those allegations. *See People v. Williams*, 576 N.E.2d 68, 76 (Ill. App. Ct. 1991). There is no deadline to decide the motion.

Crutchfield's case illustrates the flexibility of this procedure. After his initial motion for a new trial was denied, his new appellate counsel sought reconsideration, raising several errors by trial counsel. The trial court held an evidentiary hearing on the reconsideration motion at which

Crutchfield testified about the mistakes he claimed his trial attorney had made. On direct appeal he raised the same alleged errors based on this expanded record.

A defendant also has the option to expand the record through a second type of posttrial motion: the *Krankel* motion. This common-law procedure evolved from the Illinois Supreme Court's decision in *People v. Krankel*, 464 N.E.2d 1045 (Ill. 1984), which allows a criminal defendant acting pro se to bring his trial counsel's ineffectiveness to the attention of the trial court either orally or in writing. *See People v. Ayres*, 88 N.E.3d 732, 736 (Ill. 2017). This so-called *Krankel* motion triggers a duty on the part of the trial court to inquire into the underlying factual basis of the claim to determine whether "the allegations show possible neglect of the case." *Id.* If they do, the trial court must appoint counsel to assist the defendant in presenting his ineffective-assistance claim at an evidentiary hearing. *Id.*; *People v. Moore*, 797 N.E.2d 631, 637 (Ill. 2003).

Unlike an ordinary motion for a new trial, a *Krankel* posttrial motion need not be filed within 30 days of the verdict. *People v. Patrick*, 960 N.E.2d 1114, 1123 (Ill. 2011). A *Krankel* motion is timely as long as the trial court retains jurisdiction over the case; that is, for 30 days after sentencing or 30 days after the resolution of any postjudgment motion. *See id.*; *People v. Nance*, Nos. 1-12-3143, 1-13-1606, 2014 WL 4656929, at *5 (Ill. App. Ct. Sept. 18, 2014) (citing *People v. Bailey*, 4 N.E.3d 474, 477 (Ill. 2014) & Ill. Sup. Ct. R. 606(b)). And there is no deadline to hold the evidentiary hearing or resolve the motion.

Taking a different approach than the federal courts, which have "no established procedure … to develop ineffec-tive assistance claims for direct appeal," *Ramirez*, 799 F.3d at

853, Illinois established the *Krankel* procedure with the precise goal of expanding the record on appeal to better evaluate *Strickland* claims on direct review, *People v. Jolly*, 25 N.E.3d 1127, 1135–36 (Ill. 2014). "By initially evaluating the defendant's claims in a preliminary *Krankel* inquiry," the Illinois Supreme Court explained, "the circuit court will create the necessary record for any claims raised on appeal." *Id.* at 1136.

In contrast to Texas where courts must resolve motions for a new trial within 75 days of sentencing, Illinois imposes no deadline on courts to resolve either type of posttrial motion. This allows criminal defendants and their attorneys greater flexibility in preparing for the evidentiary hearing. Moreover, Illinois's posttrial procedures for expanding the record on appeal provide a more meaningful opportunity than Indiana's *Davis–Hatton* procedure, which we deemed inadequate in *Brown*. One key difference is that the *Davis–Hatton* procedure steers criminal defendants into early postconviction proceedings, whereas Illinois's *Krankel* procedure and the motion for a new trial are mechanisms by which a criminal defendant may expand the record for direct appeal.

Finally, Illinois does not bar claim splitting. Raising a *Strickland* claim on direct appeal does not prevent a prisoner from raising different claims of ineffective assistance of trial counsel in a postconviction petition. *See People v. Cleveland*, 796 N.E.2d 201, 203 (Ill. App. Ct. 2003). In contrast to Texas and Indiana, an Illinois defendant does not have nearly as much to lose by raising an ineffective-assistance claim on direct appeal.

In sum, Illinois law gives prisoners a meaningful opportunity to litigate claims of ineffective assistance of trial

counsel on direct review. The factors that justified the Court's expansion of the *Martinez* exception in *Trevino* and our application of the exception in *Ramirez* and *Brown* are not present here. We decline to extend the *Martinez–Trevino* exception to Illinois prisoners. Crutchfield has not shown cause to excuse the procedural default of his *Strickland–Lafler* claim, so the federal courts cannot hear it on habeas review.[4]

AFFIRMED.

---

[4] Crutchfield argues in the alternative that he can establish cause to excuse procedural default by demonstrating the ineffectiveness of his appellate counsel in failing to present on direct appeal his trial attorney's ineffectiveness in plea negotiations. This claim is unexhausted. Crutchfield had an opportunity in his first postconviction petition to raise a claim of ineffective assistance of appellate counsel, but he did not do so.