In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 20-2046

PEGGY JO SMITH, individually and on behalf of
similarly situated individuals,

*Plaintiff-Appellant,*

*v.*

PROFESSIONAL TRANSPORTATION, INC., and RONALD D.
ROMAIN,

*Defendants-Appellees.*

———————

Appeal from United States District Court for the
Southern District of Indiana, Evansville Division.
No. 3:13-cv-00221-RLY-MPB — **Richard L. Young**, *Judge.*

———————

ARGUED DECEMBER 9, 2020 — DECIDED JULY 16, 2021

———————

Before WOOD, BRENNAN, and ST. EVE, *Circuit Judges.*

WOOD, *Circuit Judge.* Between November 2011 and August
2013, Peggy Jo Smith worked for Professional Transportation
Inc. (PTI), a company that transports railroad crews to and
from their places of work. Believing that her position was mis-
classified for purposes of the Fair Labor Standards Act ("the

Act") and that she was not receiving proper overtime wages, she filed this action "individually and on behalf of similarly situated individuals" on December 26, 2013. The Act permits both individual actions and collective proceedings. See 29 U.S.C. § 216(b). Unlike the better-known class action under Federal Rule of Civil Procedure 23(b)(3), however, which includes everyone in the class who does not opt out, the FLSA collective action requires group members affirmatively to opt into the collective action in order to participate.

At first, it seemed that Smith's effort to serve as a named representative of a collective action under the Act was proceeding well. Her initial filing was well within the two years that the Act provides for the commencement of litigation. See 29 U.S.C. § 255(a). (Indeed, the Act has a three-year limitation period for allegations of willful conduct. *Id.)* The parties filed a joint case management plan on March 25, 2014, three months after the case was filed, and the district court promptly approved it. Docs. 15, 16. Part IV of that plan addressed "class certification matters." And the district court's docket sheet shows numerous putative group members consenting to opt into the litigation.[1]

The case went off the rails, however, when PTI pointed out that Smith herself had not filed anything in addition to her

---

[1] Some of the docket entries represent one person's act of opting in, while others represent multiple people. The number of people is indicated in parentheses. See Docs. 5 (1), 11 (1), 12 (1), 17 (1), 18 (1), 19 (1), 36 (1), 37 (1), 38 (1), 39 (1), 40 (1), 41 (1), 53 (1), 75 (1), 93 (2), 94 (4), 96 (2), 99 (6), 101 (8), 103 (9), 106 (3), 108 (2), 110 (1), 112 (12), 114 (5), 116 (2), 118 (3), 120 (3), 122 (2), 124 (1), 128 (4), 130 (1), 132 (5), 134 (3), 136 (7), 138 (6), 140 (6), 142 (2), 144 (3), 146 (1), 148 (1). This was a healthy rate of opt-ins: 118 people in addition to Smith herself, whose status we discuss below.

complaint indicating that she herself wished to participate in the group action. Relying on our decision in *Harkins v. Riverboat Services, Inc.*, 385 F.3d 1099 (7th Cir. 2004), the district court deemed this a fatal flaw for the collective action. It held that Smith's group action could not "commence" until such a consent was filed. 29 U.S.C. § 256. Moreover, by the time the court reached this conclusion, both the two-year and the three-year statutes of limitations had run. The court then concluded that Smith's complaint also failed to allege timely *individual* claims, and on that basis it dismissed the case in its entirety.

Aside from some stray references to the underlying putative collective action, Smith's appeal contests only the district court's refusal to allow her individual action to move ahead. We thus do not have before us the difficult question whether every member of a collective action, including the named plaintiff(s), must file a separate document entitled a Consent, or if it is enough for the named plaintiff(s) to indicate in the complaint that they affirmatively wish to proceed in that capacity. We conclude, however, that the court erred by refusing to allow Smith to proceed on her individual claims, and so we vacate that part of its judgment and remand for further proceedings.

**I**

PTI is an Indiana-based corporation that provides ground transportation to the people who service the nation's railroads. By providing 24-hour shuttles and drivers, PTI helps railroad crews and train workers get to their destinations and back home after their shifts' end. Peggy Jo Smith began her career there as a driver. Two years later, she was promoted to an administrative role. But a few months into this new

position, Smith began to suspect that PTI was not paying her what she was due. Unable to secure what she perceived to be her proper wages—particularly her overtime wages—she resigned on August 20, 2013. On December 26, 2013, Smith filed this lawsuit.

The Fair Labor Standards Act authorizes a worker to sue a noncompliant employer on "behalf of [her]self or themselves and other employees similarly situated." 29 U.S.C § 216(b). Tracking this authorization, Smith stated in the opening paragraph of her second amended complaint that her suit was brought by "plaintiff, Peggy Jo Smith, individually *and* on behalf of similarly situated opt-in persons who are current or former [PTI] employees." Doc. 87 (emphasis added).

In contrast to the more familiar mechanisms for class action contained in Federal Rule of Civil Procedure 23, collective actions under the Act require putative group members affirmatively to opt into the action by giving their "consent in writing to become such a party." 29 U.S.C. § 216(b). "Such consent" must be "filed in the court in which such action is brought." *Id*. In addition to evincing consent to become a party to a collective action, the filing itself "commences" the action for statute of limitations purposes:

> In determining when an action is commenced for the purposes of section 255 of this title [*i.e.,* the statute of limitations], an action commenced on or after May 14, 1947 under the Fair Labor Standards Act of 1938, as amended … shall be considered to be commenced on the date when the complaint is filed; *except that in the case of a collective or class action* instituted under the Fair Labor Standards Act of 1938, as amended …, it

shall be considered to be commenced in the case of any individual claimant—

(a) on the date when the complaint is filed, if he is specifically named as a party plaintiff in the complaint and his written consent to become a party plaintiff is filed on such date in the court in which the action is brought; or

(b) if such written consent was not so filed or if his name did not so appear—on the subsequent date on which such written consent is filed in the court in which the action was commenced.

29 U.S.C. § 256 (emphasis added). The Act has a two- or three-year statute of limitations, 29 U.S.C. § 255(a), which means that, if the written consent requirement applies, plaintiffs seeking to be represented in the collective action need to file the written consent within that time.

Over one hundred current and former PTI employees opted into Smith's collective action by filing timely written consent forms. But Smith herself, having already filed her complaint, did not submit an additional written consent form indicating her desire to join her own suit. As we indicated, the district court regarded this as the kiss of death for both her collective and her individual actions, and it dismissed the case, paving the way for this appeal.

## II

Before turning to Smith's individual claim, we think it prudent to say a few words about our decision not to address the collective aspect of her case. The question whether a named plaintiff, or plaintiffs, must file a separate written consent form in addition to indicating their desire to proceed

collectively in the pleadings turns out to be a complex one. Some things, however, are clear. Congress chose the opt-in format for FLSA collective actions because it wished to "prevent the filing of claims on behalf of a large group of unnamed and nonparticipating plaintiffs." *Anderson v. Montgomery Ward & Co., Inc.*, 852 F.2d 1008, 1016 (7th Cir. 1988). The written consent forms assure the court that the signers "want to have their rights adjudicated in [a collective] proceeding or be represented by counsel chosen by other plaintiffs." *Harkins v. Riverboat Servs., Inc.*, 385 F.3d 1099, 1101 (7th Cir. 2004). A filed written consent is "important" because it protects plaintiffs from binding judgments obtained by counsel whom they may not fully trust. *Id*.

The named representative, however, differs in certain ways from the other members of the group. Note, for example, the somewhat awkward language of section 256(a) of the statute, reproduced above, and compare it to the language of section 256(b). Section 256(a) establishes a rule for specifically named plaintiffs whose written consent to become a party plaintiff is filed with the complaint, while subpart (b) addresses the unnamed members of the group. We leave for another day the question whether the statute requires that written consent to be in a separate document, or if instead it is enough if the complaint itself clearly indicates the intent of the plaintiff to proceed collectively. Complaints, after all, are either signed by the plaintiff's attorney or personally, if the litigant is unrepresented. See FED. R. CIV. P. 11(a). It is impossible for a named plaintiff to be surprised with an unwanted collective action, and she herself selected her lawyer.

But the language of section 256(a), which admittedly addresses not the processing of a collective action, but instead

the statute of limitations, can be read otherwise. Our caselaw is somewhat inconsistent on the question whether a separate form must be filed. We have held that in a representative action brought under the Age Discrimination in Employment Act—a statute that follows the FLSA opt-in model, 29 U.S.C. § 626(b)—the filing of a "routine written consent" is not necessary when the named plaintiffs "hired a lawyer to file a complaint on their behalf and had thus clearly indicated their consent to suit." *Anderson*, 852 F.2d at 1018–19 (cleaned up). On the other hand, in *Harkins* we did not follow *Anderson*'s approach to written consents. It is difficult to reconcile these two cases, even though nothing in *Harkins* indicates that the panel invoked Seventh Circuit Rule 40(e) to overrule or modify *Anderson*.

Our sister circuits also appear to be split on this issue. The Eighth Circuit has followed the *Harkins* approach and has thus required even the named plaintiff to file a separate consent form, in order to be entitled to proceed as a party in the collective action. *Gomez v. Tyson Foods, Inc.*, 799 F.3d 1192, 1194 (8th Cir. 2015). Other circuits have apparently taken a different path, although to be fair, the question has not always been squarely presented and thus the analysis has been somewhat thin. That said, in decisions from the Fourth, Fifth, Ninth, and Eleventh Circuits, named plaintiffs were not required to file a separate written consent. See *Mickles v. Country Club Inc.*, 887 F.3d 1270, 1276 (11th Cir. 2018) (stating that named plaintiffs need only "file [a complaint] on behalf of herself and 'other "similarly situated" employees'" to become a proper plaintiff, whereas only 'the opt-in employee' 'must give' her written consent to become a party to the action"); *Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 758 (4th Cir. 2011) ("[I]n a collective action under the FLSA, a

named plaintiff represents only himself until a similarly-situated employee opts in as a 'party plaintiff' by giving 'his consent in writing.'"); *Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 916–17 (5th Cir. 2008) ("[I]n a FLSA collective action, the statute of limitations for a named plaintiff runs from the date that the plaintiff files the complaint, while the limitations period for an opt-in plaintiff runs from the opt-in date."); see also *Partlow v. Jewish Orphans' Home of S. Cal., Inc.*, 645 F.2d 757, 758 (9th Cir. 1981) ("Under the FLSA, a member of the class who is not individually named in the complaint is not a party to the lawsuit unless he affirmatively 'opts in' by filing a written consent with the court."); *Kinney Shoe Corp. v. Vorhes*, 564 F.2d 859, 862 (9th Cir. 1977) (same).

The state of the law on this issue is thus far too unsettled for us to reach out and decide an issue that the appellant herself has barely briefed. Collective actions under the FLSA are relatively common, and we are confident that this issue will return to us in a fully briefed form at some point.

## III

We turn, then, to the heart of the present case: whether the district court erred by dismissing Smith's individual claim along with her collective claims. The question is whether section 216(b) authorizes "dual capacity" suits, in which a plaintiff sues simultaneously as a group representative and as an individual. The answer is yes, for a number of reasons.

The Federal Rules of Civil Procedure permit a party to "join, as independent or alternative claims, as many claims as it has against an opposing party." FED. R. CIV. P. 18(a). It is the federal pleading rules—not section 216(b)—that determine

whether multiple claims under the Fair Labor Standards Act may be joined together.

To determine whether Smith has stated individual claims in her complaint against PTI, we must conduct a *de novo* review to determine whether she has included enough facts to put PTI on notice of her individual claims. See *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In contrast, when reviewing a decision rendered on summary judgement, we need not limit ourselves to the pleadings. We may look at the full record that was developed on summary judgment, taking it in the light most favorable to Smith, to see if a trier of fact could rule in her favor. Moreover, to the extent that materials that were added to the record later show that PTI was aware of Smith's intention to pursue her individual claims, we also may rely on those materials.

The district court thought that the facts alleged in Smith's second amended complaint related only to the collective action and not to her individual claims. This was error. While it is true that Smith captioned the two substantive sections of her complaint "Collective Action Allegations" and "National Collective Action Pursuant to the FLSA," the very first paragraph of the complaint said that she was also proceeding in an individual capacity. We should be long past the point when the label attached to a group of allegations in a complaint displaces the content taken as a whole.

Read in the light most favorable to Smith, we conclude that the second amended complaint contained sufficient factual allegations related to her individual claims to put PTI on notice that she intended to sue it both in an individual and a representative capacity. She explicitly stated as much in the

caption of both her original complaint and in her second amended complaint, which was the operative pleading.

Paragraphs 21 through 33 of Smith's second amended complaint further demonstrate the district court's error. There the complaint describes with specificity Smith's role at PTI, her duties, and her pay and time allocations. Several of these allegations are unique to Smith and are not incorporated into the parts of the complaint that refer to the group.

For example, Paragraph 25 alleges that Smith "was encouraged to make over-the-road trips to supplement" any shortfall in her wages but was "forbidden from working as a driver so that she would be working over 40 hours in any week." Paragraph 29 alleges that Smith was "paid $375 per week on a salary basis, for the performance of executive or managerial duties, regardless of the number of hours she was actually required to work to accomplish her duties." Paragraph 33 explains how, after PTI began requiring more extensive time logging, Smith "was told not to submit claims for overtime, as that was what caused her predecessor to be terminated [*sic*], and that she would not be paid for such overtime." And in the complaint's prayer for relief, it is "plaintiff Peggy Jo Smith, *and* all other similarly situated [employees]" that request a favorable judgment (emphasis added). The second amended complaint sufficed to put PTI on notice that Smith was, among other things, pursuing her personal claim against the company. But there's more.

On August 14, 2014, defendant's counsel deposed Smith and obtained the following clarification:

> Q: At the top of Exhibit 1, Ms. Smith, on the very first page, on the top left, it says Peggy Jo Smith, in capital letters. Do you see that?
>
> A: Yes.
>
> Q: It says individually. What do you understand that means? That you're individually suing the defendants?
>
> A: Yes.
>
> Q: And then it says, and Peggy Jo Smith on behalf of similarly situated individuals. Do you see that?
>
> A: Yes.

Dkt. 210:6 at 18. Then a few years later, when moving to decertify the class, defendant's counsel implored the district court to "grant PTI's motion to decertify this collective action, dismiss the Opt Ins without prejudice, and allow Smith's claims to proceed individually." Dkt. 217 (Jan. 20, 2017).

Nothing more need be said. The operative complaint and later developments in the case indicate that PTI was under no illusions about Smith's intentions to bring individual claims. Regardless of what happens to the collective action, she is entitled to proceed individually.

## IV

We VACATE the district court's summary judgment order in part and REMAND with instructions to permit Smith's individual claims to proceed. Each side is to bear its own costs on appeal.