In the

# United States Court of Appeals

## For the Seventh Circuit

———————————

No. 20-1876

JONATHON ADEYANJU,

*Petitioner-Appellant*,

*v.*

LANCE WIERSMA, Administrator,
Division of Community Corrections,

*Respondent-Appellee*.

———————————

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 11-cv-81-wmc — **William M. Conley**, *Judge*.

———————————

ARGUED MAY 12, 2021 — DECIDED AUGUST 31, 2021

———————————

Before FLAUM, HAMILTON, and BRENNAN, *Circuit Judges*.

BRENNAN, *Circuit Judge*. For his role in a gang shooting, a jury convicted Jonathon Adeyanju of attempted homicide and endangering safety by use of a firearm. His primary defense at trial was that he was not involved, as no physical evidence connected him to the crime, and he said the State's witnesses could not be trusted. Adeyanju's counsel contended that the shooters—whoever they were—intended to scare but not to

kill their gang rivals, so they were guilty of the endangering safety charges but not attempted homicide.

His counsel was ineffective, Adeyanju submits, because he should have requested a jury instruction on a lesser-included offense to attempted homicide—first-degree recklessly endangering safety. Then, the jury could have found that he was among the shooters but did not intend to kill anyone. But the jury already had that option with the endangering safety by use of a firearm charges, which it chose not to take. Because Adeyanju fails to show that he was prejudiced by counsel's purported error, we affirm the district court's denial of his 28 U.S.C. § 2254 petition.

# I

## A

On the evening of August 9, 2005, a group of men fired a hail of bullets into a crowd of rival gang members gathered outside a garage in Oregon, Wisconsin. There were no fatalities, but three of the victims suffered gun-shot wounds (one to the hand and thigh, one to the thigh, and one to the groin). The plot, it appears, was a preemptive strike: the shooters wanted to prevent retaliation against members of their own gang, including Adeyanju's brother, who had robbed members of the rival gang.

Adeyanju was charged as one of the shooters with three counts each of attempted first-degree intentional homicide and of endangering safety by use of a firearm. The *mens rea* requirement differs for these two crimes: attempted homicide requires "intent to kill" another person, WIS. STAT. § 940.01(1), whereas endangering safety by use of a firearm requires "[i]ntentionally discharg[ing] a firearm into a vehicle or

building under circumstances in which he or she should realize there might be a human being present," WIS. STAT. § 941.20(2)(a). Further, Adeyanju was charged as a "party to" these crimes, meaning that he could be found guilty for directly committing the crimes, aiding and abetting the commission of the crimes, or acting in a conspiracy to commit the crimes. WIS. STAT. § 939.05(2).

At trial, defense counsel argued principally that Adeyanju was not among the shooters. He did not offer a specific alibi, and Adeyanju exercised his right not to testify. Instead, counsel highlighted that no physical evidence tied Adeyanju to the shooting. In addition, he attempted to cast doubt on the State's witnesses who placed Adeyanju on the scene, noting confusion about the number of shooters and the witnesses' purported motivations to lie.

Adeyanju's counsel also presented an alternative defense: the shooters did not intend to kill their rivals, but rather simply to scare them. In support of this theory, counsel elicited testimony on cross-examination that some of the participants did not intend to kill anyone. Counsel argued to the jury in closing that because the shooters did not intend to kill, the shooting was "cover[ed]" by the endangering safety by use of a firearm charges, but not the attempted homicide charges.

Counsel drafted a jury instruction on a lesser-included offense for attempted first-degree homicide—first-degree recklessly endangering safety, WIS. STAT. § 941.30(1). But he did not request this charge at the jury instruction conference, and the jury was never instructed on it. Ultimately, Adeyanju was convicted of all six counts.

**B**

Adeyanju moved for state postconviction relief, arguing his trial counsel was ineffective for failing to request the first-degree recklessly endangering safety jury instruction. At an evidentiary hearing, his counsel testified he felt the defense's strategies were limited by his client's decisions not to accept a plea offer and not to testify. Heading into trial, counsel thought Adeyanju was likely to be convicted on all counts. Counsel said his client never insisted on an "all-or-nothing" defense. He did not recall discussing the possibility of a lesser-included offense instruction with his client, but said if he had, he would have remembered. The lesser-included offense instruction would have been consistent with his alternative lack-of-intent defense theory. Counsel suggested he had no strategic reason for not requesting the instruction; rather, he said he "didn't think of it" during trial.

The state court denied post-conviction relief, concluding that counsel had been effective because there was "no basis" to request a lesser-included offense. First, the court explained that under Wisconsin law, "[i]f a 'reasonable view' of the evidence is sufficient to support a guilty verdict beyond a reasonable doubt for the greater and lesser-included offenses, then no lesser-included instruction need be given." *State v. Weeks*, 477 N.W.2d 642, 645–46 (Wis. Ct. App. 1991) (quoting *State v. Bergenthal*, 178 N.W.2d 16, 21 (1970), *cert. denied*, 402 U.S. 972 (1971)). Further referencing *Weeks*, the state court noted that "intent to kill" within the definition of first-degree homicide "means either that the actor 'has a purpose'" to take the life of another human being "or is aware that his or her conduct is practically certain to cause that result." *Id.* at 647 (Fine, J., concurring) (emphasis removed) (quoting WIS. STAT.

§ 939.23(4)). And, the court emphasized, Adeyanju was charged under WIS. STAT. § 939.05(2) as a party to the crime of attempted homicide, meaning the jury could have found him guilty of that crime if any of the other shooters had "intent to kill" any of the gang rivals or if any "was aware that his conduct was practically certain to kill" one of them.

The court then highlighted that, as part of a "concerted effort" in which Adeyanju was a "willing participant," "five or six people, all facing in the same direction, all firing their guns at once" shot a "[m]inimum of 33 rounds" toward the rival gang's garage. The shooters also made extensive efforts to avoid getting caught, including rubbing the ammunition with alcohol prior to loading each weapon to make sure that no fingerprints could be found, selecting some firearms that would not leave casings, and wearing "virtually identical … black T-shirts." Thus, the court concluded, the record did not reveal evidence that would cast a reasonable doubt on any element of attempted first-degree homicide, including doubt on the element of intent.

The Wisconsin Court of Appeals affirmed on different grounds. *State v. Adeyanju*, 773 N.W. 2d 225, 2009 WL 2047271 (Wis. Ct. App. July 16, 2009) (per curiam). Also evaluating Adeyanju's claim under the *Strickland* framework, the appeals court concluded it was reasonable for counsel not to request a lesser-included offense instruction because the instruction may have harmed Adeyanju. *Id.* at *3–4. If the jury found that Adeyanju did not have the requisite intent for attempted homicide, it would have had to acquit him of that crime. *Id.* at *3. But if the lesser-included instruction were introduced, the jury could have reached a guilty verdict on it. *Id.* Therefore, the court concluded, it was objectively reasonable "for

counsel to forego [sic] a lesser-included offense instruction in the hope of forcing the jury into complete acquittal, rather than giving it a second option for conviction." *Id.* at *3.

The Wisconsin Supreme Court denied review, and Adeyanju did not seek certiorari in the Supreme Court of the United States. Instead, he petitioned for federal habeas relief under 28 U.S.C. § 2254, which the district court denied.

## II

We review de novo the district court's denial of Adeyanju's petition for a writ of habeas corpus. *See Schmidt v. Foster*, 911 F.3d 469, 476 (7th Cir. 2018) (en banc). "Federal habeas review … exists as 'a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal.'" *Woods v. Donald*, 575 U.S. 312, 316–17 (2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011)). Relief is rarely available. We may grant it only to a state prisoner who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a).

Before us, Adeyanju continues to press, as he did in state court, that he received ineffective assistance because his trial counsel did not propose a jury instruction on the lesser-included offense of recklessly endangering safety. To prevail, Adeyanju must show under *Strickland v. Washington*, 466 U.S. 668 (1984), and subsequent authority, that his trial counsel provided ineffective assistance. *Strickland* requires a showing of both deficient performance and prejudice resulting from it. *Id.* at 687. Counsel performance fails to meet constitutional standards only when it falls "below an objective standard of reasonableness" and it prejudices a petitioner only if "there is

a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 687–88, 694. A petitioner is entitled to habeas relief only if he satisfies both of *Strickland*'s prongs. *See Thill v. Richardson*, 996 F.3d 469, 476 (7th Cir. 2021).

We turn first to whether Adeyanju was prejudiced by his trial counsel's performance. The parties do not debate the standard of review on this prong—they agree that the Wisconsin Court of Appeals addressed only Adeyanju's counsel's performance, so they ask us to review de novo the issue of prejudice. "In these circumstances, the Supreme Court has instructed, we treat the two prongs of *Strickland* as divisible and review the prejudice prong by taking our own fresh look at the evidentiary record." *Gish v. Hepp*, 955 F.3d 597, 605 (7th Cir. 2020); *see also Rompilla v. Beard*, 545 U.S. 374, 390 (2005) (applying de novo review to the issue of prejudice where the state court addressed only counsel's performance under *Strickland*). We therefore presume without deciding that the Antiterrorism and Effective Death Penalty Act of 1996's deferential standard of review under § 2254(d) does not apply.

Adeyanju argues there was a reasonable probability that at least one juror would find that he and the other shooters acted recklessly, rather than with intent to kill the occupants of the garage. Citing *Keeble v. United States,* 412 U.S. 205, 212 (1973), Adeyanju maintains that when a defendant is "plainly guilty of *some* offense" but "one of the elements of the offense charged remains in doubt," and the jury is given the stark choice to acquit or convict on that offense, "the jury is likely to resolve its doubts in favor of conviction." He compares this case to *United States ex rel. Barnard v. Lane*, 819 F.2d 798, 803-04

(7th Cir. 1987), in which the defendant's counsel provided in-effective assistance because he failed to ask for justification or manslaughter jury instructions in addition to instructions on first-degree homicide. That omission left the jury with no way to reach a finding of reduced culpability—Lane's only viable defense after he admitted to shooting the victim but explained he had been carrying a firearm due to fear of the victim. *Id.* This case is like *Lane*, Adeyanju insists, as without the lesser-included offense instruction, the jury likely convicted him of attempted homicide—even if it had doubts about whether the shooters intended to kill their gang rivals—because the jury knew that shooting toward an occupied garage was some sort of crime.

This case differs from *Lane*, though, in important ways. Here, the jury could have reached a verdict consistent with the reduced-culpability theory while still finding Adeyanju guilty of some crime by acquitting him of the attempted hom-icide charges but convicting him of endangering safety by use of a firearm. Like recklessly endangering safety, endangering safety by use of a firearm does not require proof that the de-fendant intended to kill anyone. The former involves "reck-lessly endanger[ing] another's safety under circumstances which show utter disregard for human life," WIS. STAT. § 941.30(1), with recklessness in this context meaning creating "an unreasonable and substantial risk of death or great bodily harm to another human being and the actor is aware of that risk," *id.* § 939.24(1). Similarly, endangering safety by use of a firearm criminalizes "[i]ntentionally discharg[ing] a firearm into a vehicle or building under circumstances in which he or she should realize there might be a human being present." *Id.* § 941.20(2)(a).

The jury had the option of finding that Adeyanju and the other shooters had a lesser degree of culpability, but did not choose it. In his closing argument, Adeyanju's counsel contended that if the jury doubted the shooters intended to kill their gang rivals, it should find Adeyanju guilty of only the three endangering safety by use of a firearm charges. "[I]t's just not true," his counsel argued, that when "[y]ou fire shots at people [it is] because you intend to kill them." Rather, he told the jury, "when you take a look at the jury instructions, on counts four, five, and six … that pretty much covers the situation that actually occurred … that night, which is shooting into an occupied dwelling." It is unconvincing, as Adeyanju suggests, that offering the recklessly endangering safety instruction—a crime with a similar *mens rea* requirement to endangering safety by use of a firearm—would have convinced the jury to find that Adeyanju and the shooters lacked an intent to kill.

Our conclusion on this point is strengthened by the state court's finding that overwhelming evidence supported the shooters' intent to kill their rivals. *See McAfee v. Thurmer*, 589 F.3d 353, 357 (7th Cir. 2009) (defendant not prejudiced by failure to request lesser-included offense instruction where evidence was "overwhelming").[1] As that court detailed, the

---

[1] We have previously held that when a state appellate court does not expressly adopt the trial court's reasoning and instead remains silent on one of the *Strickland* prongs, we give "deference only to the prong the appellate court did reach." *Thomas v. Clements*, 789 F.3d 760, 766 (7th Cir. 2015). More recently, however, the Supreme Court held in *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018), that when the final state court adjudication on the merits summarily affirms an earlier state court decision, federal habeas courts "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale." Here, the

shooters' plan was intentional: five or six men pulled up and shot their guns into the crowded garage, firing at least 33 rounds. Further, the shooters took elaborate steps to avoid getting caught: they covered their faces with bandanas, they wore all black, and they wiped down every bullet they loaded into their guns, to leave no fingerprints. Finally, one of the bullets fired was found lodged in a car parked in front of the garage, four-and-one-half feet off the ground—evincing intent to shoot chest high and thus to kill, rather than just to frighten.

Adeyanju also argues that the unsubmitted jury instruction might have changed the result of his trial because *some* of the other shooters who testified at his trial said they did not intend to kill anyone. He highlights that under cross-examination two of the shooters stated they did not intend to kill anyone. Lucas Rodriguez said he did not "intend to kill somebody," but rather just wanted "[t]o get [the gang rivals] scared" so that "they would leave [Rodriguez] alone." And

---

Wisconsin Court of Appeals did not explicitly adopt the trial court's reasoning, but it also did not explicitly decline to do so or in any way disagree with the trial court's reasoning. Without deciding whether *Wilson* conflicts with *Thomas*, we give the trial court's reasoning great weight under comity. Federal habeas review is confined by "a foundational principle of our federal system: State courts are adequate forums for the vindication of federal rights." *Burt v. Titlow*, 571 U.S. 12, 19 (2013). For one, it is well recognized that "state courts know and follow the law," *Donald*, 575 U.S. at 316 (quoting *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam))—especially in cases "involv[ing] such a common claim as ineffective assistance of counsel under *Strickland*," *Titlow*, 571 U.S. at 19. Further, the same state court judge presided over Adeyanju's criminal trial and his post-conviction proceedings. His decision therefore sheds helpful light on the trial record and, in turn, on Adeyanju's prospects for acquittal on the attempted homicide charges.

Andrew Pirsch testified he did not "intend to kill" the gang rivals when he fired his gun.

But that contention is not persuasive because Adeyanju was charged and found guilty as a party to a crime under WIS. STAT. § 939.05(2). Under Wisconsin law, a party to a crime is guilty of that crime whether or not that party intended the crime or had the intent of its perpetrator. *State v. Stanton*, 316 N.W.2d 134, 138 (Wis. Ct. App. 1982). As the Wisconsin Court of Appeals ruled, because Adeyanju was convicted as a party to a crime, "if *any* one of the shooters … had intent to kill, that intent would be sufficient to convict all defendants." *Adeyanju*, 773 N.W.2d 225, at *2. We cannot overrule this conclusion about state law. *See Bradshaw v. Richey*, 546 U.S. 74, 76 (2005) ("[A] state court's interpretation of state law … binds a federal court sitting in habeas corpus."); *Miller v. Zatecky*, 820 F.3d 275, 277 (7th Cir. 2016) ("A federal court cannot disagree with a state court's resolution of an issue of state law."). To acquit Adeyanju of attempted homicide, the jury would have had to find that *none* of the other shooters had the requisite intent to kill.

The State also elicited plenty of testimony contradicting that which Adeyanju highlights. When questioned by the State, Rodriguez testified that the overall plan for the shooting was "to get" the gang rivals "before they get us," explaining that "get them" meant to "[t]ry to kill them." Rodriguez contradicted his earlier testimony by saying that killing someone had "passed [his] mind" and that it was "[s]ort of" his intention to kill the people in the garage. He further admitted that he and the others were shooting "[i]n the garage towards the people" and he said he did not really care if he hit someone. He also testified that when he asked Adeyanju what he had

done at the time of the shooting, Adeyanju replied "[h]e shot all six" bullets from his gun's cylinder. When Pirsch was questioned by the State, he testified he was indeed shooting at the "[p]eople" as well as a house. Even on cross-examination, when asked whether he intended to kill anyone, Pirsch first answered, "I don't know. I shot at them."

So under de novo review, Adeyanju has failed to show a reasonable probability that, but for counsel's failure to propose a lesser-included offense instruction, his trial would have come out differently. As the state court said, no one died during this shooting "but for the grace of God." The jury was presented with the evidence described above, and Adeyanju's counsel expressly requested that the jury find that the shooters lacked intent to kill and therefore were guilty of only the lesser offense of endangering safety by use of a firearm. Instead, the jury found Adeyanju and the other participants guilty of all charges, including attempted homicide—meaning the jury concluded that an intent to kill was present. Not only was a compromise available for the jury on the endangering safety by use of a firearm counts, but there is only a small difference between the crime on which the jury was instructed and the instruction Adeyanju points to for recklessly endangering safety. That difference is highly unlikely to have had a "reasonable probability" of changing the trial's outcome to benefit Adeyanju, as *Strickland* requires.

*        *        *

When the petitioner's arguments concerning the prejudice prong fail, as here, we need not address whether counsel's performance was deficient. *Thill*, 996 F.3d at 476–77 ("noting that 'it is unnecessary and undesirable for [a habeas court] to consider the attorney performance facet of the analysis' when

'an ineffectiveness claim may be disposed of on the basis of a lack of prejudice'" (alteration in original) (quoting *Taylor v. Bradley*, 448 F.3d 942, 949 (7th Cir. 2006))).

For these reasons, we AFFIRM the denial of Adeyanju's § 2254 petition.