In the

# United States Court of Appeals
## For the Seventh Circuit

_____

No. 21-2463

DONALD G. KARR, JR.,

*Petitioner-Appellant,*

*v.*

MARK R. SEVIER, Warden,

*Respondent-Appellee.*

_____

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:19-cv-01973-JPH-TAB — **James P. Hanlon**, *Judge.*

_____

ARGUED FEBRUARY 9, 2022 — DECIDED MARCH 30, 2022

_____

Before FLAUM, BRENNAN, and ST. EVE, *Circuit Judges.*

BRENNAN, *Circuit Judge.* An Indiana jury convicted Donald
Karr of rape and domestic battery for his assaults on A.P., his
former girlfriend. Karr then fired his attorney, hired a new
one, and pursued two claims of ineffective assistance of trial
counsel in state court. Those claims were rejected by the state
trial court and on direct appeal. Karr then sought federal
habeas relief under 28 U.S.C. § 2254, and the district court
denied his petition.

His trial counsel was ineffective, Karr submits, because he failed to investigate A.P.'s history of medication use, and he introduced no evidence about whether Karr used his cellphone during his second assault of A.P. If the trial attorney had procured and introduced this evidence, Karr contends, A.P.'s trial testimony could have been impeached. But the jury had an ample basis on which to find A.P. credible, and there is no reasonable probability that any evidence Karr references would have affected the trial's outcome. Karr thus fails to show he was prejudiced by his trial counsel's purported errors.

Also before us are six additional claims for ineffective assistance of trial counsel, which Karr raised for the first time in federal habeas proceedings. Ordinarily, federal courts are barred from considering defaulted claims when reviewing habeas petitions. Because Karr did not raise those claims in Indiana state court, he procedurally defaulted them. Karr concedes the procedural defaults but asserts they are excusable under a narrow equitable exception delineated by the Supreme Court. That exception does not apply to insubstantial defaulted claims such as the ones Karr presents, though, and it does not apply in this procedural posture. We therefore affirm the denial of habeas relief.

I

A. Factual Background

We recount the facts primarily as they were found by the Indiana Court of Appeals. In § 2254 cases, a state court's determination of a factual issue is "presumed to be correct" unless the petitioner rebuts it by "clear and convincing

evidence." 28 U.S.C. § 2254(e)(1); *Powell v. Fuchs*, 4 F.4th 541, 548 (7th Cir. 2021).

On the night of May 5, 2015, A.P., the victim, was living with Donald Karr and her three young children in Noblesville, Indiana. A.P. was putting her children to bed when Karr returned home and angrily accused her of sneaking a man into the house. Karr then hit A.P. in the face several times. Next, he grabbed her by her hair and ripped some of it out of her head. Karr then told A.P. that she had to perform oral sex on him every day and every night.

After confronting one of A.P.'s children and sending the child back to bed, Karr closed the blinds, approached A.P., and unbuckled his pants. A.P. tried to kick Karr away from her. At this point, A.P. began experiencing abdominal pains and feeling nauseous, which she believed was related to a previously diagnosed ovarian cyst. She convinced Karr to transport her to the hospital.

Upon arriving, A.P. told a nurse to contact a police officer because Karr had been hitting her. Officer Craig Denison was present in the ultrasound room, and A.P. told him that Karr had been hitting her and pulling her hair. The officer photographed A.P.'s hair, and her face which showed swelling. A clump of hair from A.P.'s scalp came loose, and she gave it to Denison. After photographing the clump of hair, Denison disposed of it in a trash can at the hospital.

Denison informed A.P. that he believed there was insufficient probable cause to arrest Karr. Because she could not prevent Karr from occupying the home they shared, A.P. left with him. A.P. and Karr drove home together without conflict.

Once home, Karr again became upset with A.P., this time about an unrelated minor topic. He told her they were "going to pick up where [they] left off." He then hit her in the face. Karr took off his clothes and ordered A.P. to perform oral sex on him. She refused, but he forced her to comply. Karr eventually stopped and began to lecture A.P. about his "rules" for the house.

A.P. testified that before going to bed, Karr began to search for a pornographic video to watch. Karr again told A.P. to perform oral sex on him. At first she refused, but she eventually relented "[o]ut of fear of what would happen if [she] said no." During that time A.P. noticed a light shining from Karr's phone and she "assumed he was taking a video."

A.P. returned to the hospital the next day, where she met with another police officer, Matthew Boudreau. A.P. reported Karr's assaults to Boudreau. A forensic nurse, Nakia Bowens, examined A.P. and observed that A.P. had redness and tenderness in her scalp area, tenderness on her jawbone, and redness on her chin. According to Bowens, A.P. also had petechiae—small, red dots that indicate blood has burst—on the roof of her mouth. Petechiae may be caused by blunt force trauma, Bowens opined, such as by a penis striking the roof of a mouth. Bowens took photographs of A.P.'s injuries, and some of those photographs were later introduced at trial.

### B.  Procedural History

*Criminal charges and trial.* The State of Indiana charged Karr with domestic battery (Count 1), two counts of rape (Counts 2 and 3), strangulation (Count 4), and intimidation (Count 5). Attorney Joshua Taylor represented Karr at trial. The State presented the evidence of the assaults, discussed

above. Taylor cross-examined A.P. on Karr's behalf. By challenging their authentication, Taylor successfully excluded text messages that would have damaged Karr's defense.

At the close of evidence, Taylor moved for a directed verdict on all counts, which he later amended to include only Counts 3, 4, and 5—the second rape charge and the strangulation and intimidation charges. The trial court granted Taylor's motion in part and entered a directed verdict of not guilty on Count 5, the intimidation charge. The remaining counts were submitted to the jury. Karr was found guilty on the domestic battery and rape counts, but not guilty on the strangulation count.

*Posttrial proceedings.* Prior to sentencing, Karr discharged Taylor and hired Jane Ruemmele as his attorney. The defense moved for a new trial, alleging Taylor provided Karr ineffective assistance. The trial court held two evidentiary hearings on the motion, at which Ruemmele raised several issues and Taylor testified about various decisions he had made before and during trial.

One issue concerned A.P.'s medication history. When questioned A.P. admitted she had been prescribed hydrocodone at the time of the assaults, but she did not recall whether she was taking it at that time. She testified that any drug consumption during that period did not affect her ability to recall the assaults. Another issue that arose concerned a forensic audit of Karr's cellphone. Ruemmele called Officer Matt McGovern, of the Noblesville Police Department, who had conducted a forensic analysis of Karr's phone. McGovern testified he found no evidence of a pornographic video that was accessed or recorded on Karr's cellphone on either May 5, 2015, or early the following

morning when the second assault occurred. Per McGovern, though, he could not exclude the possibility that content which had been deleted from the phone did not appear in his report.

Arguing for a new trial, Ruemmele asserted that if A.P.'s "prescription drug medication … had been explored she could have been adequately impeached on her ability to observe and to report the events of the day." Ruemmele also contended the lack of evidence of a pornographic video on Karr's cellphone called into question A.P.'s credibility and the reliability of her testimony. The court was not persuaded and denied the motion for a new trial. According to the trial judge, Taylor had been "very successful" in excluding the inculpatory text messages that Karr sent to A.P. Karr was sentenced to 17.5 years in prison, with five years of the sentence suspended.

*Karr's direct appeal and postconviction proceedings.* On Karr's behalf, Ruemmele pursued a direct appeal of the trial court's denial of her motion for a new trial. But then she received permission to stay the appeal and pursue postconviction relief in the trial court under Indiana's *Davis-Hatton* procedure (explained later in greater detail). In the petition for postconviction relief, Ruemmele alleged that Taylor had been ineffective as Karr's trial counsel for two main reasons. First, Taylor failed to impeach A.P. with evidence of her drug use. Second, Taylor failed to note the absence of pornographic or other evidence from Karr's cellphone. The State moved for summary denial of the petition, which the trial court granted. The trial court reasoned that claim preclusion barred the claims presented in the petition because they had been raised

and denied on the merits in connection with the earlier motion for a new trial.

In a consolidated appeal, Ruemmele challenged Karr's convictions, his sentence, and the denial of postconviction relief. The Indiana Court of Appeals affirmed the trial court in every respect. According to the appeals court, Karr was not prejudiced by Taylor's decision not to investigate and potentially present evidence of A.P.'s medication use. The appeals court also concluded that Karr did not suffer prejudice from Taylor's decision not to present the cellphone evidence to the jury. The Indiana Supreme Court denied Karr's petition to transfer. His petition to the Supreme Court of the United States for a writ of certiorari likewise was denied.

*Federal habeas proceedings.* Karr filed a habeas petition under 28 U.S.C. § 2254(d) in the United States District Court for the Southern District of Indiana, which he later amended with the assistance of retained counsel. In the petition Karr again referenced the ineffectiveness claims related to A.P.'s medications and the forensic audit of his phone. Karr also raised several new bases for the alleged ineffectiveness of his trial counsel. The State opposed relief and argued Karr's claims were meritless or procedurally defaulted.

The district court denied habeas relief. Because each of the six defaulted claims for ineffective assistance of trial counsel was vague or otherwise facially deficient, the district court ruled that those claims lacked "some merit." Thus, the procedural defaults were not excused under *Martinez v. Ryan*, 566 U.S. 1 (2012), or *Trevino v. Thaler*, 569 U.S. 413 (2013), which in limited circumstances provide that a procedural default will not bar a federal habeas court from hearing a

substantial claim of ineffective assistance of trial counsel if a prisoner is denied a meaningful opportunity to raise the claim. On the two non-defaulted claims for ineffective assistance of trial counsel, the district court concluded that the Indiana Court of Appeals' no-prejudice determination was a reasonable application of federal law.

The district court granted a certificate of appealability on the question of whether the Indiana Court of Appeals unreasonably applied established federal law in concluding that Karr was not prejudiced by Taylor's failure to present evidence of A.P.'s medication history. Karr appealed, and he filed what was labeled a motion for issuance of a certificate of appealability. Our court construed the motion as a request to expand the certificate of appealability to include the previously adjudicated cellphone claim, and the six defaulted claims for ineffective assistance of trial counsel. We granted Karr's request and expanded the certificate of appealability.

## II

First, we consider the two claims for ineffective assistance of trial counsel that Karr presented to the state court. We also briefly discuss Taylor's overall performance on Karr's claim for ineffective assistance of trial counsel. Then, we examine whether a lack of substantiality precludes Karr's defaulted claims from proceeding under the *Martinez-Trevino* exception to the rule prohibiting procedurally defaulted claims from being raised in federal habeas proceedings. We close by examining whether the *Martinez-Trevino* exception could apply in a case in this procedural posture.

The district court's legal conclusions are reviewed de novo and its factual determinations are examined for clear error.

*Kimbrough v. Neal*, 941 F.3d 879, 881 (7th Cir. 2019) (citing *Morris v. Bartow*, 832 F.3d 705, 709 (7th Cir. 2016)). Federal courts may not grant habeas relief on any claim that was "adjudicated on the merits in State court proceedings" unless such adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). This standard is highly deferential, and we may not grant relief where "fairminded jurists could disagree on the correctness of the state court's decision." *Minnick v. Winkleski*, 15 F.4th 460, 468 (7th Cir. 2021), *cert. denied*, No. 21-1042 (U.S. Mar. 21, 2022).

Federal habeas review of a claim for ineffective assistance of counsel is "doubly deferential." *Id*. This is so because we must give "both the state court and the defense attorney the benefit of the doubt." *Burt v. Titlow*, 571 U.S. 12, 15 (2013). In reviewing ineffective-assistance claims, we apply a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Minnick*, 15 F.4th at 468 (quoting *Strickland v. Washington*, 466 U.S. 668, 690 (1984)).

Although an isolated error can support a claim for ineffective assistance of counsel if the error is sufficiently egregious and prejudicial, "it is difficult to establish ineffective assistance when counsel's overall performance indicates active and capable advocacy." *Makiel v. Butler*, 782 F.3d 882, 902 (7th Cir. 2015) (quoting *Harrington v. Richter*, 562 U.S. 86, 111 (2011)). The performance of counsel (1) violates constitutional standards only "when it falls below an objective standard of reasonableness," and it (2) prejudices a petitioner only if "there is a reasonable probability that, but

for counsel's unprofessional errors, the result of the proceeding would have been different." *Adeyanju v. Wiersma*, 12 F.4th 669, 673 (7th Cir. 2021) (quoting *Strickland*, 466 U.S. at 687–88, 694). "A petitioner is entitled to habeas relief only if he satisfies both of *Strickland*'s prongs." *Id*.

### A. Medical Records Claim

First up is Karr's claim that Taylor was ineffective for failing to investigate and potentially present evidence of A.P.'s medication history. Karr argues, as he did before the district court, that Taylor should have researched A.P.'s potential use of medications when the assaults took place. Karr asserts that, had Taylor done so, he could have presented the jury with evidence casting significant doubt on A.P.'s memory on the night of the assaults. This argument has two parts. Karr contends the jury should have heard that (1) A.P. was prescribed hydrocodone at the time of the assaults; and (2) A.P. told Karr that at the hospital she had been given an intravenous line with medication.

At the postconviction evidentiary hearing, A.P. testified she did not recall whether she had been taking hydrocodone at the time of the assaults as well as that any drug consumption did not affect her ability to recall the assaults. A.P. explained she might have told Karr that she had taken medication intravenously to account for the additional time she spent at the hospital. This would conceal from Karr that, at that time, she was speaking with a police officer about Karr's abuse. Considering how the trial proceeded—and given A.P.'s testimony—the Indiana Court of Appeals determined that Taylor had made a reasonable strategic decision not to attempt to obtain A.P.'s medical records. The Court of Appeals observed that it was not clear whether any

such records would have been discoverable or admissible at trial. Thus, the court held that Taylor's failure to pursue the investigation of A.P.'s medical records did not prejudice Karr. In this procedural posture, we must decide whether that holding was contrary to, or an unreasonable application of, *Strickland*. *See* 28 U.S.C. § 2254(d)(1); *Minnick*, 15 F.4th at 468.

The ruling of the Indiana Court of Appeals rested on the evidentiary decisions at trial and the potential defenses available to Taylor as Karr's attorney. Most prominently, the appeals court agreed with the State that the evidence showed A.P.'s thoughts and speech were clear on the night of the assaults and during her later conversations with police officers. Obtaining, and even introducing, A.P.'s medical records therefore would not have plausibly enabled Taylor to cast doubt on A.P.'s memory on the night of the assaults. To show that the state court unreasonably applied *Strickland* in making its no-prejudice determination, Karr would have to demonstrate why the state appeals court's logic was flawed. But he has not done so.

In these federal habeas proceedings, Karr has not challenged the state appeals court's determination that A.P.'s thought and speech were clear when she reported the assaults, which was shortly after they occurred. So, there is no factual foundation for Karr's assertion that the evidence he claims should have been investigated and introduced at trial would have affected the jurors' assessment of A.P.'s credibility. This is particularly true because, per A.P.'s testimony and the absence of any contradictory evidence, there is reason to doubt that she was taking medication at the time of the assaults. It follows that there is no "reasonable probability that, but for counsel's [alleged] unprofessional

errors [regarding A.P.'s medications], the result of the proceeding would have been different." *Adeyanju*, 12 F.4th at 673. We agree with the district court that the Indiana Court of Appeals' no-prejudice determination with respect to A.P.'s medication records was a reasonable application of *Strickland*.

The state appeals court also described Taylor's decision not to pursue the discovery of A.P.'s medical records as a strategic decision. "[W]hen counsel's pretrial investigation is less than complete, counsel's strategic choices are 'reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.'" *Olvera v. Gomez*, 2 F.4th 659, 669 (7th Cir. 2021) (quoting *Strickland*, 466 U.S. at 691). Here, Ruemmele introduced evidence at one of the posttrial evidentiary hearings that Taylor was aware a detective had met with A.P. a few days after the assaults occurred. During that meeting, the detective averred, "the vast majority of the time [A.P.] was collected and matter-of-fact."

This testimony supports the state appeals court's conclusion that Taylor's decision not to investigate A.P.'s medication records was a reasonable exercise of his professional judgment. Given that Taylor knew A.P. could speak in a calm and detailed manner about what happened to her on the night of the assaults, he reasonably could have concluded that any records of her medications would not have affected the jury's evaluation of her credibility. Notably, Ruemmele did not elicit any testimony contradicting this rationale during her examination of Taylor at the evidentiary hearing.

Moreover, as the State notes, any attempt Taylor could have made to impeach A.P. with evidence of her medication

history would have been contrary to the theory of defense he presented to the jury—that A.P. had purposely fabricated the story of the assault for financial gain. Again, there was no evidence presented at the postconviction hearings to refute this rationale for Taylor's decision not to pursue the medication records. Without more, Karr has not shown that the Indiana Court of Appeals unreasonably applied *Strickland* in concluding that he suffered no prejudice from Taylor's strategic decisions regarding A.P.'s medication records.

**B. Cellphone Claim**

Next, we consider Karr's claim that Taylor provided ineffective assistance because he did not present the jury with evidence relating to McGovern's forensic audit of Karr's cellphone. According to Karr, this amounted to ineffective assistance because the audit did not reveal that Karr accessed a pornographic video or made a video recording during the second assault. The Indiana Court of Appeals ruled that Karr suffered no prejudice under *Strickland* from Taylor's decision in this respect. The state appeals court reasoned that even if this evidence had been presented, it would not necessarily have undermined A.P.'s account of the assaults. That court also concluded there was sufficient evidence adduced at trial for the jury to draw credibility determinations about A.P.'s testimony.

We agree with the district court that the Indiana Court of Appeals reasonably applied *Strickland* in reaching a no-prejudice determination on this issue as well. Even if the forensic analysis of Karr's cellphone had been presented to the jury, it is extremely unlikely that evidence would have changed the trial's outcome. Recall that McGovern could not exclude the possibility that one or more videos had been

deleted from Karr's cellphone and did not appear on the officer's forensic-analysis report. Had Taylor introduced the cellphone evidence at trial, then on cross-examination the State could have elicited the limits of that evidence. Karr has therefore not shown it is likely that the introduction of the cellphone evidence would have impeached A.P.'s testimony about Karr's cellphone use.

Further, as the district court noted, presumably the State would have also argued that A.P. was, at most, mistaken to assume Karr was viewing pornography or taking a video during the second assault. At no point has Karr explained why the jury would not have accepted such an explanation. Considering the cellphone evidence in the context of the entire trial, *Thompson v. Vanihel*, 998 F.3d 762, 767–68 (7th Cir. 2021), there is no reasonable probability that, but for Taylor's alleged unprofessional errors, the result of the trial would have been different.

Karr's arguments about the impact of the forensic audit of his cellphone on A.P.'s credibility are likewise unconvincing. The jury heard from several witnesses, including A.P., officers Denison and Boudreau, and nurse Bowens. The jury "had ample evidence on which to base a determination of [A.P.'s] credibility." *Hodkiewicz v. Buesgen*, 998 F.3d 321, 328 (7th Cir. 2021). It was therefore "reasonable for the court of appeals to conclude … there is not a reasonable likelihood" that this one piece of evidence "would have so changed the jury's credibility determination that they would have acquitted [Karr.]" *Id*. (citations omitted).

Essentially, Karr contends "in a credibility contest, counsel must employ scorched-earth tactics in attacking the credibility of the primary witness." *Gilbreath v. Winkleski*, 21

F.4th 965, 991 (7th Cir. 2021). But Karr ignores that there are "significant downsides" to attacking a sympathetic accuser or "even being perceived as attacking her." *Id*. The Indiana Court of Appeals recognized those downsides when, in making its no-prejudice determination, it noted that the forensic analysis of Karr's cellphone "would not necessarily undermine [A.P.'s] account of the incidents."

In fact, an attempt to impeach A.P. with the forensic analysis of Karr's cellphone could have hurt rather than helped Karr's defense. *See id*. at 990–91. The jury might have perceived a potential attempt to cast A.P. as unreliable—by focusing on an extraneous part of her account—as reinforcing the strength of the State's case on the core details of the assaults. Thus, the Indiana Court of Appeals reasonably applied *Strickland* in ruling that Karr was not prejudiced by Taylor's failure to present evidence from the forensic analysis of the cellphone.

### C. Taylor's Overall Performance

Because we conclude that Karr's prejudice arguments fall short, we need not reach the question of whether Taylor's overall performance was deficient. Indeed, this court's precedents discourage us from undertaking a wholesale analysis of attorney performance in such circumstances. *See Adeyanju*, 12 F.4th at 676; *Thill v. Richardson*, 996 F.3d 469, 476–77 (7th Cir. 2021). Yet, without deciding the question, the State may be correct that Taylor's overall performance was at least adequate. According to the trial court, Taylor's "skillful objections" kept evidence damaging to Karr's defense from being presented to the jury. Taylor also argued for and procured a directed verdict of not guilty on Count 5, the charge of intimidation. And the jury acquitted Karr on Count

4, the charge of strangulation. This all supports the conclusion that Taylor's performance did not fall below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688.

### III

We turn now to the six additional claims that were procedurally defaulted when they were not raised in Indiana state court. The Supreme Court has established the general rule that federal habeas petitioners may not use ineffective assistance of postconviction counsel as a rationale for excusing their procedural defaults of claims that trial counsel was ineffective under *Strickland*. *See Coleman v. Thompson*, 501 U.S. 722, 752–54 (1991).

Karr asserts the equitable exception delineated by the Supreme Court in *Martinez* and *Trevino* excuses these procedural defaults. In *Martinez*, the Supreme Court fashioned a "narrow exception" to the rule in *Coleman*: "Inadequate assistance of counsel at initial-review collateral proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." 566 U.S. at 9. That exception applies to excuse procedural defaults in federal habeas proceedings if state procedural law required a petitioner's claims to be raised in an initial-review collateral proceeding, but the petitioner failed to do so. *See id*. at 11–12. The Court in *Martinez* further wrote that "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit." *Id*. at 14.

The next year in *Trevino* the Court extended the *Martinez* exception to include cases where a state's procedural rules

meant that a prisoner was technically permitted to raise claims for ineffective assistance of trial counsel on direct appeal, yet the structure and design of the state procedural system made it "virtually impossible" to do so. 569 U.S. at 417. This court has added our take on this exception. In *Brown v. Brown*, we held that Indiana's procedural system makes it sufficiently difficult for claims of ineffective assistance of trial counsel to be brought on direct appeal such that "[t]he *Martinez-Trevino* form of cause to excuse procedural default is available to Indiana defendants who seek federal habeas relief." 847 F.3d 502, 512–13 (7th Cir. 2017).

Under Indiana's *Davis-Hatton* procedure,[1] a prisoner may "suspend his direct appeal to pursue an immediate petition for postconviction relief for the purpose of developing a factual record to support the claim. The direct appeal and collateral-review appeal are then consolidated." *Crutchfield v. Dennison*, 910 F.3d 968, 975 (7th Cir. 2018). This procedure is limited and rarely used, however, and "the Indiana appellate courts have expressed a strong preference for reserving *Strickland* claims for collateral review." *Id*. Because the *Davis-Hatton* procedure, along with other aspects of the structure, design, and operation of Indiana's procedural system, does not offer most defendants a meaningful opportunity to present a claim for ineffective assistance of trial counsel on direct appeal, Indiana defendants who seek federal habeas relief may use the *Martinez-Trevino* exception. *See id*. at 976; *Brown*, 847 F.3d at 512–13.

---

[1] *Davis v. State*, 368 N.E.2d 1149 (Ind. 1977); *Hatton v. State*, 626 N.E.2d 442 (Ind. 1993).

The State counters that the *Martinez-Trevino* exception does not apply here for three reasons: (1) Ruemmele caused the procedural defaults, at least in part when she served as direct-appeal counsel (rather than solely as postconviction counsel); (2) Karr retained Ruemmele (instead of the State appointing her); and (3) the defaulted claims are without merit. We focus primarily on the third rationale—the lack of a substantial claim with "some merit." *Martinez*, 566 U.S. at 14. While "full consideration of the merits is not required," our inquiry into whether a petitioner's claims are substantial under *Martinez* and *Trevino* is deeper than our court's examination on whether to grant a certificate of appealability. *Brown*, 847 F.3d at 515. Beyond that clarification, *Brown* does not address the contours of the applicable standard for determining what qualifies as a substantial claim under *Martinez* and *Trevino*.

Here, regardless of the precise standard for a substantial claim, Karr cannot meet it. Now, we conclude that Karr's defaulted claims did not even warrant the issuance of a certificate of appealability, as they are insufficiently developed to show that "jurists of reason could disagree with the district court's resolution … or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Id*. (quoting *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003)). Each of the six defaulted claims is vague, conclusory, or both. There is, therefore, no basis on which to debate the district court's decision. *See id*. Next, we briefly review each of Karr's defaulted claims.

*Claim One (Improper Jury Instruction)*. Karr asserts Taylor was ineffective for failing to object to a jury instruction, which did not state that witness credibility may be impeached by

prior inconsistent statements. As the district court observed, "Karr does not identify which jury instruction he is talking about, nor does he elaborate on why the failure to object amounts to ineffective assistance." Karr does not address this deficiency on appeal.

*Claim Two (Impeachment of Bowens)*. Karr alleges Taylor was ineffective for failing to impeach Bowens, the forensic nurse who examined A.P. Karr fails to specify how he believes Taylor should have impeached Bowens. And we cannot readily determine from the record what material Taylor allegedly should have used for impeachment or how this purported impeachment would have impacted Karr's overall defense.

*Claim Three (DNA Testing)*. According to Karr, Taylor should have ordered DNA testing of hair specimens from A.P. But the hair sample obtained from A.P. at the hospital was discarded, and Karr does not contend that hair specimens originating with someone other than A.P. were introduced at trial, so it is difficult to discern what would have been accomplished if Taylor had A.P.'s hair tested. On appeal, Karr does not explain the import of any DNA testing that was not conducted.

Denison's disposal of the hair sample also underlies Karr's claim under *Brady v. Maryland*, 373 U.S. 83 (1963). That claim lacks merit as well, though. There can be no viable *Brady* claim where, as here, the defendant and his attorney knew at the time of trial that the evidence had been discarded. To succeed on a claim that evidence was unlawfully destroyed under the Supreme Court's decision in *Arizona v. Youngblood*, Karr would have to "show bad faith on the part of the police" in failing to preserve the evidence in question. 488 U.S. 51, 58

(1988). He also must demonstrate that "the exculpatory value of the evidence was apparent before it was destroyed." *McCarthy v. Pollard*, 656 F.3d 478, 485 (7th Cir. 2011). Karr can make neither showing—nor does he attempt to do so—because there is no reason to believe Denison acted in bad faith by discarding the hair sample or that any exculpatory value of the hair sample was apparent at the time it was discarded. Even accounting for Karr's incorrect framing of the issue, there is no *Youngblood* claim here that meets the threshold requirement of substantiality under *Martinez*. *See Brown*, 847 F.3d at 515.

*Claim Four (Double Jeopardy)*. Karr contends Taylor was ineffective for not objecting to a violation of the double-jeopardy protections under the Indiana Constitution. His brief does not explain this alleged violation, and no violation is apparent from our review of the trial proceedings.

*Claim Five (Vague Jury Charge)*. Karr also alleges Taylor failed to object to an unconstitutionally vague jury charge. As the district court noted, Karr did not identify the jury charge or explain why it is vague. Nor does he address the issue in his appellate briefs.

*Claim Six (Hearsay in Jury Charge)*. Karr argues last that Taylor should have objected to improper hearsay included in a jury charge concerning witness testimony. Before the district court, Karr asserted the witness testimony was that of Amy Summerfield, but there was no record that anybody by that name testified at Karr's trial. On appeal, Karr does not identify the witness testimony or alleged hearsay at issue.

*    *    *

In sum, not one of these six claims is substantial under *Martinez*. Karr has not offered a plausible argument that any defaulted claim is substantial or has "some merit." *Martinez*, 566 U.S. at 14. So, the *Martinez-Trevino* exception does not excuse the procedural defaults.

## IV

Given this case's procedural posture, a question arises as to whether defaulted claims, if substantial, would succeed here.

First, we agree with the State that Ruemmele's representation of Karr on both initial postconviction review and on direct appeal removes this case from the terrain occupied by the *Martinez-Trevino* exception. On Karr's behalf Ruemmele presented four claims to the Indiana Court of Appeals: two challenges to Karr's conviction and sentence, and two arguments regarding ineffective assistance of trial counsel. Ruemmele was acting—primarily, if not exclusively—in her capacity as Karr's direct-appeal counsel when she procedurally defaulted the six claims for ineffective assistance of trial counsel. Thus, the Indiana Court of Appeals did not hear those six claims because Ruemmele failed to raise them. Her role as Karr's counsel on direct appeal distinguishes this case from *Martinez*, where the Supreme Court found it crucial that the error committed by the prisoner's attorney occurred in initial-review collateral proceedings, precluding the Court from considering or adjudicating the prisoner's ineffective-assistance-of-trial-counsel claim on direct review of the state proceeding. *See* 566 U.S. at 10–11.

Here, as the State argues, Karr could have raised a claim before the Indiana Supreme Court that his direct-appeal counsel had been ineffective in procedurally defaulting the six claims for ineffective assistance of trial counsel. But he did not do so, perhaps because Ruemmele was still representing him on further appeal. "[A]n ineffective-assistance-of-counsel claim asserted as cause for the procedural default of another claim can itself be procedurally defaulted." *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000); *see also Smith v. Gaetz*, 565 F.3d 346, 352 (7th Cir. 2009) (ineffective assistance of appellate counsel must be raised at each level of state-court review or else it is procedurally defaulted). By failing to raise ineffective assistance of appellate counsel before the Indiana Supreme Court, Karr procedurally defaulted that claim, which if successful could have excused the procedural defaults of his six claims for ineffective assistance of trial counsel.

A related inquiry is whether, notwithstanding Ruemmele's dual role as counsel on initial review and direct appeal, Karr's retention of her also prevents the procedural defaults from being excused.

The State asserts it is not responsible for a procedural default that results from the allegedly deficient performance of a retained, rather than appointed, postconviction counsel. *Martinez* specified two scenarios in which a prisoner may establish cause to excuse the default of an ineffective-assistance-of-trial-counsel claim: "The first is where the state courts did not appoint counsel in the initial-review collateral proceeding for a claim of ineffective assistance at trial. The second is where appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under [*Strickland*]." 566 U.S. at 14. The

State presents the question whether a third scenario—where the prisoner retains counsel—falls within the scope of *Martinez*. Karr disagrees with the State's analysis, arguing that how counsel undertook his representation does not impact whether there is cause to excuse the defaults.

The parties touch upon this question in their submissions, but they do not fully and adequately present the arguments for our consideration, *Liu v. SEC*, 140 S. Ct. 1936, 1947 (2020), especially on a question with a likelihood of recurrence and significant consequences. *See Smith v. Pro. Transp., Inc.*, 5 F.4th 700, 703–04 (7th Cir. 2021). Accordingly, we choose not to reach it here.

*        *        *

For these reasons, we AFFIRM the judgment of the district court.