In the

# United States Court of Appeals

## For the Seventh Circuit

No. 23-2395

WILLIAM THOMAS HUDSON, III,

*Petitioner-Appellant,*

*v.*

SUE DEHAAN, Director,

*Respondent-Appellee.*

Appeal from the United States District Court for the
Western District of Wisconsin.
No. 3:21-cv-00498 — **James D. Peterson**, *Chief Judge.*

ARGUED SEPTEMBER 18, 2024 — DECIDED FEBRUARY 11, 2025

Before RIPPLE, JACKSON-AKIWUMI, and KOLAR, *Circuit Judges.*

RIPPLE, *Circuit Judge.* In 2005, William Hudson was tried and convicted in Wisconsin state court of conspiracy to commit first degree intentional homicide and of conspiracy to commit arson. After exhausting his state remedies, Mr. Hudson brought a petition for a writ of habeas corpus in the district court. *See* 28 U.S.C. § 2254. The district court denied relief,

and Mr. Hudson timely appealed to this court. We now affirm
the judgment of the district court.

## I

## BACKGROUND

### A.

The events leading to Mr. Hudson's convictions began
during a previous incarceration.[1] While incarcerated,
Mr. Hudson agreed with another inmate, Scott Seal, to kill
Seal's ex-girlfriend and to commit arson. Seal agreed to pay
Mr. Hudson for committing both of these acts. However, Seal
was acting as an informant for the State. After Mr. Hudson
was released, he met with an undercover officer posing as
Seal's defense attorney. The undercover officer gave
Mr. Hudson an envelope containing $6,000 and the addresses
of the targets. Once Mr. Hudson accepted that envelope, he
was arrested. At the time of his arrest, Mr. Hudson did not
have any weapons or materials that could be used to commit
these crimes.

At trial, the theory of Mr. Hudson's defense was that he
never intended to kill Seal's ex-girlfriend or to commit arson
but was instead trying to scam Seal in order to support him-
self and his sister, Dana Hudson. According to Mr. Hudson,
he had tried to encourage a relationship between Seal and

---

[1] The following facts are recounted in the Court of Appeals of Wisconsin
opinion. *State v. Hudson*, No. 2019AP1667, 2021 WL 8567774, at *1 (Wis. Ct.
App. Mar. 4, 2021). In habeas proceedings, we presume that these facts are
correct. *See* 28 U.S.C. § 2254(e)(1) ("In a proceeding instituted by an appli-
cation for a writ of habeas corpus by a person in custody pursuant to the
judgment of a State court, a determination of a factual issue made by a
State court shall be presumed to be correct.").

Dana after Seal saw a picture of Dana and "expressed interest" in her.[2] Mr. Hudson arranged for Dana and Seal to write each other letters, instructing Dana to limit the information she shared with Seal. At one point, Mr. Hudson tried to pressure Seal by telling him that Dana was in Chicago and would be in danger until Seal paid money to a third party. Dana was safe in Wisconsin at the time. Mr. Hudson and Seal's agreement did not solidify until the following year, when Mr. Hudson became more concerned about Dana's financial situation. Mr. Hudson maintained that Dana's troubles motivated him to try to get money from Seal, but that he never intended to commit the crimes. Mr. Hudson was the only witness for the defense. Although Dana was present, Mr. Hudson's counsel did not call her as a witness.

### B.

After his conviction, Mr. Hudson filed a direct appeal under Section 974.02 of the Wisconsin Statutes, alleging outrageous governmental conduct and ineffective assistance of trial counsel for failing to argue that the government engaged in outrageous conduct.[3] The Wisconsin circuit court denied postconviction relief, and the Court of Appeals of Wisconsin

---

[2] R.21-3 at 199.

[3] R.21-6 at 1. In Wisconsin, "a defendant's first avenue of relief is a postconviction motion under § 974.02," which is filed in the trial court. *Page v. Frank*, 343 F.3d 901, 905–06 (7th Cir. 2003). A defendant need not raise "[a]rguments concerning sufficiency of the evidence or issues previously raised before the trial court" in a Section 974.02 motion to preserve his right to appeal, but all other claims "must first be brought in a § 974.02 motion." *Id.* (citations omitted).

affirmed that denial and the underlying conviction.[4] The Supreme Court of Wisconsin denied Mr. Hudson's petition for review.[5]

Mr. Hudson then filed his postconviction motion for collateral review under Section 974.06 of the Wisconsin Statutes.[6] This motion raised the claims now before us. Mr. Hudson alleged that trial counsel was ineffective for failing to call Dana as a witness and for not investigating fully her possible testimony. Mr. Hudson maintained that his counsel should have undertaken a more thorough investigation of Dana's testimony and then should have called her because she would have corroborated his testimony and served as a character witness. He further argued that postconviction counsel provided ineffective assistance by failing to raise these claims.

At evidentiary hearings, the Wisconsin circuit court heard testimony from trial counsel, postconviction counsel, Dana, and Mr. Hudson.[7] The court then held that Mr. Hudson's counsel's performance was not constitutionally deficient. The Court of Appeals of Wisconsin affirmed the circuit court's judgment, holding that "Hudson's claims fail because he has

---

[4] *Hudson*, 2021 WL 8567774, at *1.

[5] *State v. Hudson*, 989 N.W.2d 110 (Wis. 2021) (unpublished table decision).

[6] "After the times for filing postconviction motions under § 974.02 and for taking the subsequent direct appeal have expired, the defendant has the option of seeking a collateral attack on the judgment under Wis. Stat. § 974.06." *Page*, 343 F.3d at 905–06. Section 974.06 motions "are limited to jurisdictional and constitutional issues." *Id.*

[7] In Wisconsin, these evidentiary hearings are referred to as *Machner* hearings. *State v. Machner*, 285 N.W.2d 905, 908–09 (Wis. Ct. App. 1979).

not shown that trial counsel performed deficiently."[8] Because his claim regarding trial counsel failed, Mr. Hudson's claim regarding post-conviction counsel also failed. The Supreme Court of Wisconsin denied review.

In his habeas petition in federal court, Mr. Hudson claimed that trial counsel was ineffective for failing to call Dana as a witness and for insufficiently investigating her possible testimony.[9] He submitted that the state court of appeals, in applying *Strickland v. Washington*, 466 U.S. 668, 687 (1984), employed the incorrect standard of review in assessing the Wisconsin circuit court's decision. Mr. Hudson also contended that the state court made an unreasonable determination of fact when it said that Mr. Hudson's trial counsel decided, *during* the trial, not to call Dana as a witness. Finally, Mr. Hudson contended that the state court unreasonably applied *Strickland* when it determined that Mr. Hudson's counsel was not deficient.

The district court denied the petition for relief under 28 U.S.C. § 2254. It held that the state court had not misapplied *Strickland*'s standard of review and that trial counsel had "satisfied *Strickland*'s deferential standard."[10] The court acknowledged that trial counsel "could have, as Hudson

---

[8] *Hudson*, 2021 WL 8567774, at *2.

[9] Mr. Hudson filed his first federal habeas petition in the Eastern District of Wisconsin in 2014. Proceedings were stayed pending Section 974.06 collateral review in state court. After the completion of those proceedings, the stay was lifted in 2021 and the case was transferred to the Western District of Wisconsin. Mr. Hudson then filed his amended petition.

[10] *Hudson v. Pollard*, No. 21-cv-498, 2023 WL 3950107, at *5 (W.D. Wis. June 12, 2023).

argues, done more to investigate the potential value of calling Dana Hudson as a witness" and that the state court made a factual determination unsupported by the record. *Id.* at *5–6. The court nevertheless denied the petition because "the record as a whole supports the state court's outcome." *Id.* (quoting *Whatley v. Zatecky*, 833 F.3d 762, 779 (7th Cir. 2016)). Mr. Hudson now appeals the district court's denial of his petition.

## II

## DISCUSSION

### A.

We review a district court's ruling on a habeas petition de novo but, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), we give deferential treatment to state-court decisions on the merits. *Nichols v. Wiersma*, 108 F.4th 545, 552 (7th Cir. 2024) (citing 28 U.S.C. § 2254(d)). Specifically, in order to obtain relief, Mr. Hudson must demonstrate that the state court's denial "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d)(1)–(2). For a federal court to determine that the state court unreasonably applied federal law, the application "must have been more than incorrect or erroneous[,] … [it] must have been 'objectively unreasonable.'" *Wiggins v. Smith*, 539 U.S. 510, 520–21 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 409 (2000)). "The application of a law is reasonable if it is 'at least minimally consistent with the facts and circumstances of the case.'" *Hall v. Zenk*, 692 F.3d 793, 798 (7th Cir.

2012) (quoting *Schaff v. Snyder*, 190 F.3d 513, 523 (7th Cir. 1999)); *see also Andrew v. White*, No. 23-6573, 2025 WL 247502 at *3 (U.S. Jan. 21, 2025) (citing *Harrington v. Richter*, 526 U.S. 86, 101 (2011)).

Here, Mr. Hudson's petition alleges ineffective assistance of trial counsel and of postconviction counsel. In a habeas petition based on ineffective assistance of counsel, we give what is sometimes referred to as "'doubl[e] deferen[ce]': the federal court must give first the defense attorney and then the last state court to rule on the matter 'the benefit of the doubt.'" *Cook v. Foster*, 948 F.3d 896, 908 (7th Cir. 2020) (quoting *Burt v. Titlow*, 571 U.S. 12, 15 (2013)). Under *Strickland*'s two-part analysis, "the defendant must show that counsel's performance was deficient" and "that the deficient performance prejudiced the defense." 466 U.S. at 687. Relevant to our case, the Court in *Strickland* also explained that counsel "has a duty to make reasonable investigations," and "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 690–91. The Court of Appeals of Wisconsin decided the case on the deficient performance prong of the *Strickland* test. The court held that trial counsel's decision was strategic and that "Hudson had not overcome the strong presumption that counsel's conduct was within the wide range of reasonable professional assistance."[11]

Mr. Hudson now submits that the Court of Appeals of Wisconsin unreasonably applied *Strickland*. First, Mr. Hudson contends that the Court of Appeals of Wisconsin reviewed the

---

[11] *Hudson*, 2021 WL 8567774, at *2.

trial court's ruling on a clear error standard, while *Strickland* mandates that a reviewing court employ a de novo standard. This error, he submits, is an unreasonable application of law. Second, Mr. Hudson contends that the Court of Appeals of Wisconsin made an unreasonable determination of fact by finding that trial counsel decided *during* the trial not to call Dana as a witness and that counsel made the decision in light of Mr. Hudson's testimony. Mr. Hudson submits that his trial counsel clearly made the decision before the trial began, which the district court acknowledged is likely true.[12] He therefore concludes that the Wisconsin court unreasonably applied *Strickland* when holding that his counsel was not deficient. Because, in his view, the Wisconsin court unreasonably applied the *Strickland* analysis, Mr. Hudson asks us to conclude that the Wisconsin court is not entitled to deference. Mr. Hudson then urges us to employ de novo review and to hold that his counsel was deficient and that these deficiencies prejudiced the outcome of the case.

We may decide a *Strickland* issue on either prong of the established test. "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies." *Strickland*, 466 U.S. at 697. Here, the state of the record before us counsels that the prudent course is to pretermit any discussion of the performance prong of the *Strickland* analysis and to decide this case on the prejudice prong. Proceeding in this manner, our evaluation of the record convinces us that, even assuming Mr. Hudson's contentions concerning counsel's performance have merit, his petition still

---

[12] *Hudson*, 2023 WL 3950107, at *5.

fails because he has not demonstrated that any possible deficiencies by his trial counsel were prejudicial. *See Adeyanju v. Wiersma*, 12 F.4th 669, 673–76 (7th Cir. 2021).

**B.**

Because the Court of Appeals of Wisconsin did not address the prejudice prong of the *Strickland* test, we consider the issue de novo. We therefore "review the prejudice prong by taking our own fresh look at the evidentiary record." *Id.* at 673 (quoting *Gish v. Hepp*, 955 F.3d 597, 605 (7th Cir. 2020)). To demonstrate prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Mr. Hudson submits that Dana's testimony would have made his case stronger. In his view, only limited and circumstantial evidence supported the prosecution's theory of his intent. Dana's testimony would have enhanced Mr. Hudson's own credibility and supported his descriptions of the financial difficulties that motivated his actions.

In the state court's hearing, however, Mr. Hudson's trial counsel explained why he did not believe that Dana's testimony was necessary. In trial counsel's view, Mr. Hudson was himself a credible and convincing witness. He characterized Mr. Hudson's testimony as "excellent."[13] Additionally, Mr. Hudson's trial counsel testified that he "didn't think that what [Dana] could add would have been greatly beneficial or would have even improved upon [Mr. Hudson's]

---

[13] R.21-14 at 37–38.

testimony."[14] Her testimony would have described her financial difficulties, Mr. Hudson's instructions that she write to Seal, and Mr. Hudson's lie when he told Seal that she was in Chicago. Dana admitted that she did not know that Mr. Hudson was scamming Seal and that she did not know anything about the scheme.[15] Thus, Dana's testimony could only corroborate that she had financial difficulties, which was Mr. Hudson's claimed motive to scam Seal.

But a jury could just as easily find that Dana's financial difficulties motivated Mr. Hudson to murder and to commit arson for money. Dana could not have offered testimony regarding whether Mr. Hudson actually intended to commit these crimes. Nor could she have offered testimony refuting other evidence.[16] Even if Dana had testified, the evidence that Mr. Hudson merely intended to scam Seal would still have consisted solely of Mr. Hudson's testimony. The absence of Dana's testimony therefore does not "undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

### Conclusion

For the foregoing reasons, the district court's decision is affirmed.

AFFIRMED

---

[14] *Id.* at 39.

[15] *Id.* at 178–79.

[16] *Cf. Toliver v. McCaughtry*, 539 F.3d 766, 774–78 (7th Cir. 2008) (holding that counsel's deficiencies were prejudicial when counsel failed to call witnesses that would have offered unique testimony and testimony that would impeach that of a state witness).